

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| STATE OF ALABAMA; and | ) | |
| | ) | |
| Morris J. Brooks, Jr., | ) | |
| Representative for Alabama's 5th | ) | Civil Action No. |
| Congressional District, | ) | 2:18-cv-00772-RDP |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| COMMERCE; and WILBUR L. ROSS, in his | ) | |
| official capacity as Secretary of Commerce; | ) | |
| | ) | |
| BUREAU OF THE CENSUS, an agency within the | ) | |
| United States Department of Commerce; and RON | ) | |
| S. JARMIN, in his capacity as performing the | ) | |
| non-exclusive functions and duties of the Director | ) | |
| of the U.S. Census Bureau, | ) | |
| | ) | |
| *Defendants*. | ) | |

## OPPOSED MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 3

APPLICANTS FOR INTERVENTION ..................................................................... 5

ARGUMENT ............................................................................................................. 7

I.    Applicants Are Entitled To Intervene As Of Right Under Rule 24(a)(2). .............. 7

      A.    Applicants' Motion To Intervene Is Timely. ............................................ 7

      B.    Applicants Have Substantial Interests Related To The Subject Of
            The Action. ............................................................................................... 8

      C.    A Decision In This Suit May, As A Practical Matter, Impede Or
            Impair Applicants' Ability To Protect Their Interests. ........................... 13

      D.    Applicants' Interests Are Not Adequately Represented By The
            Existing Parties To This Suit. ................................................................. 15

II.   Alternatively, Applicants Should Be Granted Permissive Intervention
      Under Federal Rule of Civil Procedure 24(b). ...................................................... 17

CONCLUSION ....................................................................................................... 19

## TABLE OF AUTHORITIES

CASES

*Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977)..........................................................................10

*Carey v. Klutznick*, 637 F.2d 834 (2d Cir. 1980) ......................................................................10

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989).......................................................*passim*

*City of Detroit v. Franklin*, 4 F.3d 1367 (6th Cir. 1993) ..........................................................10

*City of New York v. U.S. Dept. of Commerce*, 713 F. Supp. 48 (E.D.N.Y. 1989) ........................ 9

*City of Willacoochee, Ga. v. Baldrige*, 556 F. Supp. 551 (S.D. Ga. 1983) ................................10

*Clark v. Putnam Cty*, 168 F.3d 458 (11th Cir. 1999) ................................................................15

*Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999)...............................12

*Sunbelt Veterinary Supply, Inc. v. Int'l Bus. Sys. U.S., Inc.*, 200 F.R.D. 463 (M.D. Ala. 2001) ................................................................................................................................18

*Evenwel v. Abbott*, 136 S. Ct. 1120 (2016)..........................................................................13, 18

*Fed. for Am. Immigration Reform (FAIR) v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980)................................................................................................................................13

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211 (11th Cir. 1993) ......................................................................................................................14

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242 (11th Cir. 2002).............................*passim*

*Gomillion v. Lightfoot*, 364 U.S. 339 (1960) ............................................................................12

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ......................................................................10

*Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976) ......................................................................10

*Huff v. Comm'r of IRS*, 743 F.3d 790 (11th Cir. 2014)..............................................................15

*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308 (11th Cir. 2005)................................................................................................................................... 8

*Neusse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ......................................................................10

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017) ................................................................................................................ 9

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017) ................................................................................................................ 3

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ........................................... 15

*United States v. Georgia*, 19 F.3d 1388 (11th Cir. 1994) ........................................... 7

*Utah v. Evans*, 536 U.S. 452 (2002) ........................................................................ 12

## STATUTES

Act of March 1, 1790 ................................................................................................ 4

Cal. Elec. Code § 21500 ........................................................................................... 12

Cal. Welf. & Inst. Code § 17000 ......................................................................... 6, 11

Cal. Welf. & Inst. Code § 10800 .............................................................................. 6

Cal. Welf. & Inst. Code § 16500 .............................................................................. 6

Wash. Rev. Code § 29A.76.010 ................................................................................. 3

## OTHER AUTHORITIES

80 Fed. Reg. 28950-01 .............................................................................................. 4

83 Fed. Reg. 5525 ("Residence Rule") ............................................................*passim*

Fed. R. Civ. P. 24 ............................................................................... 1, 3, 17, 18, 19

Fed. R. Civ. P. 12 ................................................................................................ 18, 19

The County of Santa Clara, California; King County, Washington; and the City of San José, California (collectively, "Applicants"), by and through their undersigned counsel, hereby respectfully move to intervene as defendants in this matter as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or, in the alternative, for permissive intervention pursuant to Rule 24(b). As set forth in the Declaration of Dorian Spence, counsel for Applicants contacted counsel for the parties and have determined that the motion is opposed. In accordance with Rule 24(c), Applicants attach their proposed answer as Ex. A.

## INTRODUCTION

Plaintiffs in this action, the State of Alabama and Rep. Morris J. Brooks, Jr., seek to exclude, for the first time, undocumented persons from the upcoming decennial Census, a constitutionally mandated "actual Enumeration" of the "whole number of persons" living in each state.[1] That outcome would severely and irreparably injure Applicants' substantial interests, which differ from the interests of Defendants in this action, the U.S. Department of Commerce, Secretary Wilbur L. Ross, the Bureau of the Census, and Acting Director Ron S. Jarmin. As such, Defendants in this matter will not adequately protect Applicants' interests, and Applicants have a right to intervene.

This action implicates the interests of all of the Applicants in this matter, as all will suffer significant harm if undocumented persons are not included in the 2020

---

[1]   Applicants use the term "undocumented persons" to denote non-U.S. citizen residents of the United States without legal documentation; the term is meant to be coextensive with Plaintiffs' use of the term "illegal aliens."

Decennial Census (the "Census").  The County of Santa Clara, King County, and the City of San José are counties and a municipality that are home to disproportionately large populations of undocumented persons.  These Applicants provide critical safety-net services—including child-welfare, housing, and public-health services—to their residents, including undocumented persons.  Plaintiffs' action threatens to diminish substantially the several hundreds of millions of dollars in Census-Based Federal Funding that Applicants use to provide these services.  As Plaintiffs point out, some of the funding streams at issue allocate funds based on relative populations, such that Alabama's alleged gains from a Census count that excludes undocumented persons would be the Applicants' loss.  The relief that Plaintiffs seek also will have a profound impact on Applicants' ability to maintain accurate internal political boundaries.  The Counties, by statute, draw their own political districts by reference to census data; using the Census count Plaintiffs seek will render these political boundaries inaccurate.

Applicants' interests will go unrepresented in this action if Applicants are not allowed to intervene.  The Department of Commerce and the Census Bureau have no stake in the relative federal funding for safety-net services received by Applicants or the state and local decisions about the distribution of political representation that result from the Census count.  Also, the federal government has indicated that, at most, it does not have a view on whether undocumented persons should be counted in the Census.  Even if Defendants commence a defense to this suit, there is no guarantee—and, indeed, a substantial reason to doubt—that they will defend vigorously the position that undocumented persons must be counted.  Simply asserting a defense is not enough:

2

Defendants must assert a defense that adequately protects Applicants' interests. Therefore, Applicants seek to intervene to oppose Plaintiffs' erroneous legal interpretations and the improper relief they seek.

Applicants meet the requirements for intervention as of right under Rule 24(a): (1) this motion is timely, (2) Applicants have a substantial interest in the subject of the litigation, (3) Applicants' interest will be impaired by the disposition of the case if intervention is not allowed, and (4) the current Defendants may not adequately protect Applicants' interests. *See Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).  If, however, the Court deems Applicants ineligible to intervene as of right, Applicants should be granted permissive intervention under Rule 24(b).

## BACKGROUND

In order to conduct an enumeration of the whole number of persons residing in the United States as required by the Constitution, the Census Bureau (the "Bureau"), a component of the Department of Commerce, promulgates criteria for how to count people for the purposes of the decennial census.  *See* Residence Criteria and Residence Situations, 83 Fed. Reg. 5525 ("Residence Rule").  The current Residence Rule, which was promulgated in February 2018 following two rounds of notice and comment beginning in 2015, provides:

> The Residence Criteria are used to determine where people are counted during the 2020 Census . . . . The following sections describe how the Residence Criteria apply to certain living situations for which people

commonly request clarification . . . . 3. Foreign Citizens in the United States (a) *Citizens of foreign countries living in the United States—* Counted at the U.S. residence where they live and sleep most of the time.

83 Fed. Reg. at 5533.  There is no provision for adjusting the count based on immigration status.  Notably, although the current Residence Rule has only been in place for several months, the Bureau has consistently counted foreign citizens, regardless of their immigration status, as part of the census.  *See*, *e.g.*, 80 Fed. Reg. 28950-01 ("The Residence Rule was used to determine where people should be counted during the 2010 Census. The Rule said  . . . '(a) Citizens of foreign countries living in the U.S.—Counted at the U.S. residence where they live and sleep most of the time.'"); Declaration of Danielle L. Goldstein ("Goldstein Decl.") Ex. F, United States Census Bureau, Residence Rules: Facts About Census 2000 Residence Rules ("Citizens of foreign countries who have established a household or are part of an established household in the U.S. while working or studying, including family members with them – Counted at the household."). Indeed, "[t]his concept of 'usual residence' is grounded in the law providing for the first census, the Act of March 1, 1790, expressly specifying that persons be enumerated at their 'usual place of abode.'"  83 Fed. Reg. at 5525-01.

Plaintiffs filed suit on May 21, 2018, bringing constitutional and Administrative Procedure Act ("APA") challenges to the Residence Rule based on its inclusion of undocumented persons in the Census count.  Plaintiffs allege that they will be injured because counting undocumented persons in the 2020 Census will result in the following: (1) Alabama's loss of private and federal funding as a result of having an undocumented population that is relatively smaller than those states with larger undocumented

4

populations; and (2) Alabama's loss of one congressional seat and one electoral vote in the subsequent reapportionment, whereas states with high undocumented populations stand to gain.  Plaintiffs seek, among other relief, to have the Residence Rule declared unlawful, and a declaration that the congressional apportionment resulting from the 2020 Census must exclude undocumented persons from population totals.  As of the date of filing, Defendants have not appeared in this matter.  Another set of proposed intervenors, Diana Martinez, Raisa Sequeira, Saulo Corona, Irving Medina, Joey Cardenas, Florinda P. Chavez, and Chicanos Por La Causa ("Proposed Intervenors"), filed a motion for leave to intervene on July 12, 2018.  *See* Dkt. No. 6.  Defendants and Plaintiffs have yet to respond to that motion.

## APPLICANTS FOR INTERVENTION

**San José**, the tenth largest city in the United States, is among the twenty metropolitan areas in the United States with the largest populations of undocumented persons.  Declaration of David Sykes ("Sykes Decl.") ¶ 3 Ex. A; *id.* Ex. B.  San José receives funding based on census population counts for the State of California, which during the same time period was home to 3 million undocumented persons, more than twice as many as any other state in the nation.  *Id.* ¶ 3; *id.* Ex. B.  San José annually receives and relies upon a substantial amount of federal funding from Census-Based Funding Streams.  *Id.* ¶ 6.  Specifically, in the fiscal year ending June 30, 2016, San José received more than $10.5 million in federal Community Development Block Grants, nearly $10.3 million in Highway Planning and Construction funds passed through the California Department of Transportation and Metropolitan Transportation Commission,

more than $1 million in Economic Adjustment Assistance from the U.S. Department of Commerce, and $346,000 via pass-through funds from the Santa Clara County Social Services Agency to provide funding for senior and other nutrition services. *Id.*

**Santa Clara County** has a total population of approximately 1.9 million residents. Goldstein Decl. Ex. A. The County is among the top twenty counties with the largest populations of unauthorized immigrants in the nation based on the latest available estimates. Goldstein Decl. Ex. C. According to estimates, undocumented persons compose some 7–10% of the County's population. *Id.* Exs. B-E.

In Fiscal Year 2017, the County of Santa Clara received almost $500 million of federal funding from a variety of Census-Based Funding Streams based on census population data for both the County and California as a whole. Declaration of Miguel Márquez ("Márquez Decl.") ¶ 7. These funds were used, in many cases, to provide for essential services, like child welfare and core social safety-net services. *Id.* ¶¶ 8–13; *id.* Ex. B. For example, the County of Santa Clara receives Social Services Block Grants, Foster Care funding streams, and Maternal and Child Health Grants. *Id.* ¶ 13; *id.* Ex. B.

As the designated safety-net service provider for Santa Clara County under state law, if the federal government fails to provide funding for fundamental needs like child welfare, public health and healthcare, the responsibility for filling the funding gap in many cases ultimately will fall to the County. *See, e.g.*, Cal. Welf. & Inst. Code §§ 17000, 10800, 16500; *see also* Márquez Decl. ¶ 10.

**King County**, with a total population of 2.1 million, had the 25th largest population of undocumented persons by county in the nation in 2010–2014. Declaration

of Dwight Dively ("Dively Decl.") ¶ 3.  Undocumented persons comprise approximately 3.8% of the County's population, higher than the nation-wide average.  Dively Decl. ¶ 6. King County annually receives substantial federal funding from a variety of Census-Based Funding Streams.  *See id*. ¶ 8.  Among these, in 2016, Basic Food, Washington's SNAP program, served 14% of the population of King County, reaching 278,919 recipients at a total of $317,149,016; in the same year, Washington's TANF program served 26,157 residents of King County, at a total cost of $29,062,221.  Goldstein Decl. Ex. G.  Community Development Block Grants and Federal Transit Formula Grants are also significant sources of population-based federal funds that would be imperiled by a reduction in the determination of King County's population.  Dively Decl. ¶ 8. Significant Washington State funding streams distributed to King County are also population-based and directly determined by the decennial census population count, including Criminal Justice sales tax revenues, motor vehicle fuel taxes, and liquor revenues.  Dively Decl. ¶ 9.

## ARGUMENT

### I.     Applicants Are Entitled To Intervene As Of Right Under Rule 24(a)(2).

As detailed below, Applicants meet each of the four requirements for intervention as of right under Rule 24(a)(2), and this Court should therefore grant the motion.  *See United States v. Georgia*, 19 F.3d 1388, 1393 (11th Cir. 1994) ("Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion."); *see also Chiles*, 865 F.2d at 1213.

### A.     Applicants' Motion To Intervene Is Timely.

Courts within the Eleventh Circuit have adopted a flexible approach to the question of timeliness, and may consider a number of factors. *See Georgia*, 302 F.3d at 1259 (enumerating factors); *Chiles*, 865 F.2d at 1213. By any measure, however, Applicants' motion—filed less than two months after the Complaint—is timely, as this case is still in the preliminary stages. Plaintiffs' Complaint was filed on May 21, 2018, and Defendants have not yet responded. Nor have Plaintiffs or Defendants responded to the July 12, 2018 motion to intervene filed by Proposed Intervenors. No other legally significant proceedings have occurred; thus, Applicants' intervention will not prejudice the existing parties. *See Chiles*, 865 F.2d at 1213 (noting motion was timely when filed "only seven months after [the plaintiff] filed his original complaint, three months after the government filed its motion to dismiss, and before any discovery had begun"). Further, allowing Applicants to intervene at this early stage presents no risk of disrupting the orderly processes of the Court. *See Georgia*, 302 F.3d at 1259–60 (finding intervention timely where it "did not delay the proceedings and the court had yet to take significant action").

> **B.     Applicants Have Substantial Interests Related To The Subject Of The Action.**

Applicants have "a direct, substantial, and legally protectable interest in the subject matter of the suit," *Georgia*, 302 F.3d at 1250, and that interest is "derive[d] from a legal right." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311

8

(11th Cir. 2005).[2]  Applicants' interests need not be of a "legal nature identical to that of the claims asserted in the main action," *Chiles*, 865 F.2d at 1214, but here they are closely related.

*Federal Funding*

Plaintiffs seek to halt the counting of undocumented persons in the 2020 Census, arguing that this longstanding practice will result, *inter alia*, in Alabama losing federal funding and other jurisdictions with higher populations of undocumented persons gaining funding. *See* Compl. ¶¶ 74–86.  Applicants serve regions that are home to many foreign-born residents, including undocumented persons; they therefore have a direct, substantial, and legally protectable interest in ensuring a Census count that includes those undocumented persons, to maintain an appropriate level of Census-Based Funding to provide critical services.

The loss of federal funding is a legally protectable interest, which has been recognized previously in the standing context and which establishes a legally cognizable interest here.  *See Chiles*, 865 F.2d at 1213 ("[S]tanding cases . . . are relevant to help define the type of interest that the intervenor must assert."); *cf. City of New York v. U.S. Dept. of Commerce*, 713 F. Supp. 48, 50 (E.D.N.Y. 1989) (municipal plaintiffs'

---

[2]  Applicants need not establish standing unless Defendants determine they will not defend the lawsuit, *see Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290 (11th Cir. 2017) (establishing standing required if an intervenor pursues relief different from a party with standing); *Chiles*, 865 F.2d at 1213 (noting a putative intervenor need not establish standing so long as a case or controversy exists between the original parties).  However, should Applicants need to establish standing in the future, they will be able to do so for the same reasons that they have substantial interests related to the subject of the litigation.

allegation of loss of federal funds satisfied the standing requirement); *City of Detroit v. Franklin*, 4 F.3d 1367, 1374 (6th Cir. 1993) (city had standing to challenge Census Bureau actions based on claim that undercount would result in the loss of federal funds); *Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980) (city and state established standing by claiming a decrease in federal funds and vote dilution); *City of Willacoochee, Ga. v. Baldrige*, 556 F. Supp. 551, 553–55 (S.D. Ga. 1983) (city had standing to challenge Census Bureau population count because the loss of funds resulting from an undercount constituted a distinct and palpable injury). Moreover, if a public official's "rights and duties . . . may be affected directly by the disposition of [a case], [a public official] has a sufficient interest to intervene as of right in the action." *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987) (citing *Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977); *Hines v. D'Artois*, 531 F.2d 726, 738 (5th Cir. 1976); *Neusse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Likewise, Applicants' duties to provide safety-net services, and to administer them via Census-Based Funding, will be affected by the disposition of this litigation.

Plaintiffs themselves acknowledge—and the Census Bureau has stated—that many federal programs utilize census figures to allocate funds to state and local governments. Compl. ¶ 74; Márquez Decl. Ex. A (citing the Census Bureau's Uses of Census Bureau Data in Federal Funds Distribution publication).[3] Indeed, in 2015, the Census Bureau estimated that some $675 billion in federal assistance was distributed

---

[3]   The funds identified in the publication are referred to in this motion as "Census-Based Funds" or "Census-Based Funding."

using census data via programs such as the Medical Assistance Program, the

Supplemental Nutrition Assistance Program ("SNAP"), Medicare Part B, Temporary

Assistance for Needy Families ("TANF"), and Section 8 Housing Choice Vouchers.

Márquez Decl. Ex. A, Marisa Hotchkiss and Jessica Phelan, *Uses of Census Bureau Data*

*in Federal Funds Distribution* (Sept. 2017).  And just last week during a radio interview,

the Census Bureau's Acting Director, Defendant Ron Jarmin, reminded "everybody" of

the "need to be counted" because of the role of the census in federal funding.  *See*

Goldstein Decl. Ex. H, Hansi Lo Wang, *Transcript: Census Bureau Acting Director Ron*

*Jarmin's Interview With NPR*, (July 11, 2018) ("[T]heir neighborhoods don't get their

share of federal dollars . . . if they're not counted . . . . [W]hether it's funding for streets

or for schools or for health care, decisions throughout the federal government are made

based on the population of the local communities that people live in.").

Applicants would be hard-hit by the change to Census-Based Funding distribution

that would result from not counting undocumented persons.  The County of Santa Clara

receives close to half a billion dollars in Census-Based Funds annually, which it uses to

fund critical programs.  Márquez Decl. ¶¶ 7–8.  For example, the County receives more

than $135 million for Medicare, more than $2 million in funding for senior nutrition, and

more than $66 million in TANF funds.  It also receives significant funding through Social

Services Block Grants, Foster Care funding streams, and Maternal and Child Health

Grants.  The impact of curtailed federal funding would likely be particularly acute on the

County of Santa Clara, as, in many cases, the County would be required to fill any

funding gaps to meet its statutory obligation to provide essential safety-net services to all

indigent county residents.  *See, e.g.,* Cal. Welf. & Inst. Code § 17000; Márquez Decl. ¶¶ 10–11.  But the impact will be felt by the other Applicants, as well:  The City of San José and King County stand to lose significant federal funds if undocumented persons are no longer counted.  Sykes Decl. ¶ 7; Dively Decl. ¶ 8.  Alabama's proposed exclusion of undocumented persons from the 2020 Census count therefore directly threatens the equitable allocation of federal resources to Applicants.

> *Integrity of Accurate Internal Boundaries*

Applicants must maintain accurate internal political boundaries.  They therefore have a substantial interest in ensuring that the political apportionment that follows the Census count continues to include undocumented persons.  *See Utah v. Evans*, 536 U.S. 452, 478 (2002) (noting certain elements of the Constitution "suggest a strong constitutional interest in accuracy" of the census count); *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 333 (1999) (holding state residents had standing to sue where "[s]everal of the States in which the counties [we]re located require[d] use of federal decennial census population numbers for their state legislative redistricting"); *cf. Gomillion v. Lightfoot*, 364 U.S. 339, 342 (1960) (recognizing the "breadth and importance" of a state's power to "establish, destroy, or reorganize by contraction or expansion its political subdivisions").

The County of Santa Clara is required by statute to set its internal political boundaries by reference to the Census.  Cal. Elec. Code § 21500 ("Following each decennial federal census, and using that census as a basis, the board shall adjust the boundaries of any or all of the supervisorial districts of the county so that the

12

supervisorial districts shall be as nearly equal in population as may be . . . ."); Márquez

Decl. ¶ 14. King County has the same requirement. *See* Wash. Rev. Code § 29A.76.010

("It is the responsibility of each county . . . to periodically redistrict its governmental unit,

based on population information from the most recent federal decennial census . . . . Each

internal director, council, or commissioner district shall be as nearly equal in population

to each and every other such district . . . ."); Dively Decl. ¶ 9. If Alabama's position

prevails in this matter, it will fundamentally distort the Counties' political districts.[4]

### C.   A Decision In This Suit May, As A Practical Matter, Impede Or Impair Applicants' Ability To Protect Their Interests.

"Where a party seeking to intervene in an action claims an interest in the very . . .

subject of the main action, the potential *stare decisis* effect may supply that practical

disadvantage which warrants intervention as of right." *Chiles*, 865 F.2d at 1214; *see also*

*Georgia*, 302 F.3d at 1254 (holding a legal interest was sufficient for intervention where

---

[4]   In addition, such an outcome may implicate Applicants' interest in ensuring that they receive proportional representation based on a proper "actual enumeration" of "persons" via the decennial census. It is long-settled that all persons residing in the United States—documented and undocumented alike—must be counted to fulfill the "actual Enumeration" mandate in Article I, Section 2 of the U.S. Constitution that undergirds the decennial census. *Fed. for Am. Immigration Reform (FAIR) v. Klutznick*, 486 F. Supp. 564, 576 (D.D.C. 1980). Recently, in *Evenwel v. Abbott*, 136 S. Ct. 1120 (2016), the U.S. Supreme Court confirmed that Texas's use of *total* population numbers (including undocumented immigrants) from the decennial census while drawing legislative districts was constitutional. *Id.* at 1132. In rejecting the suggestion that such line-drawing should include only the population of eligible voters, the Supreme Court noted, "As the Framers of the Constitution and the Fourteenth Amendment comprehended, representatives serve all residents, not just those eligible or registered to vote" since "[n]onvoters have an important stake in . . . receiving constituent services, such as help navigating public-benefits bureaucracies." *Id.*

a proposed intervenor could not adequately protect its interests through a separate suit or negotiation process).  Applicants are "so situated [because] disposition of the lawsuit will, as a *practical matter*, impair their ability to protect their interests."  *Chiles*, 865 F.2d at 1214 (emphasis added).

Plaintiffs themselves contend that the outcome in this matter will profoundly affect the interests of Applicants.  Indeed, redistribution of federal funds away from jurisdictions "that show a higher population total in the Census than they would have shown if illegal aliens were excluded from the Census" is an express purpose of Alabama's suit.  Compl. ¶¶ 81–86.  Plaintiffs repeatedly and specifically identify California—home to both the County of Santa Clara and the City of San José—as such a jurisdiction.  *Id.* ¶¶ 42, 45, 63, 68, 70, 117.  But even apart from Plaintiffs' contentions, it is plain that, without accurate Census population data, Applicants will lose critical federal funding and the ability to draw accurate political boundaries if Plaintiffs prevail.  *See, e.g.*, Márquez Decl. ¶¶ 7–8, 14; Sykes Decl. ¶ 7; Dively Decl. ¶¶ 8-10.

In short, there is no doubt that Applicants have a direct, substantial, and legally protectable interest in the apportionment of finite, census-determined representation and federal funds, and the outcome of this case may impair their ability to defend those interests.  But, even if there were such a doubt, "[a]ny doubt concerning the propriety of allowing intervention should be resolved *in favor of the Applicants* because it allows the court to resolve all related disputes in a single action."  *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (emphasis added).

**D.     Applicants' Interests Are Not Adequately Represented By The Existing Parties To This Suit.**

Applicants easily meet their "minimal" burden to show that the existing parties cannot adequately represent their interests. *See Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014) ("The inadequate representation requirement should be treated as minimal and is satisfied unless it is clear that [the existing parties] will provide adequate representation." (quotations omitted)); *Georgia*, 302 F.3d at 1255–56; *Clark v. Putnam Cty*, 168 F.3d 458, 461 (11th Cir. 1999) (noting the presumption of adequate representation is "weak; in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary"); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (noting Rule 24's requirement is "satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Chiles*, 865 F.2d at 1214–15 (finding inadequate representation based on the possibility that a governmental party "may decide not to emphasize" the intervenor's interests, "but focus instead" on those of other constituencies).

Applicants have a concrete interest in how Census results will impact the distribution of federal funding among government jurisdictions and in the integrity of their internal boundaries. Defendants do not share these concerns and, as a result, cannot adequately represent Applicants' interests. *See Georgia*, 302 F.3d at 1256 (finding the Army Corps could not adequately represent Florida's interest in a water dispute with Georgia because unlike Florida, whose interest was to "ensure that Georgia's actions

15

d[id] not deprive Florida of its equitable share of water," the Army Corps had "no independent stake" in the amount of water that reached Florida); *Clark*, 168 F.3d at 461–62 (holding black voters were entitled to intervene where county commissioners had an interest in remaining politically popular and a greater willingness to settle than the intervenors who "intend[ed] to pursue their favored result with greater zeal").

Further, by its past statements and actions, the federal government has indicated that it may not resist the relief sought by Plaintiffs in the same manner as would Applicants. First, Department of Justice leadership recently refused to reject Alabama's theory. In a May 2018 House Oversight Committee hearing on the 2020 Census, Acting Assistant Attorney General for Civil Rights John Gore was asked whether undocumented persons should even be included in the 2020 Census. Mr. Gore replied, "It's not [a question] that the Department of Justice has taken a position on . . . . [Y]ou have raised several good questions that the Congress should deliberate on and make an appropriate decision on its own."[5] Moreover, Defendants have also demonstrated a willingness to depart from longstanding census practice by proposing to add an untested question to the 2020 Census requiring that all United States residents disclose whether they are citizens. Goldstein Decl. Ex. I, at 7; *id.* Ex. J.

Given the divergence between Applicants and Defendants related to Applicants' interest in federal funding and apportionment, and the equivocation by the Department of

---

[5]    2020 Census Progress Report at 18:50, C-SPAN (May 18, 2018), https://www.c-span.org/video/?445756-1/justice-department-official-progress-report-2020-census.

Justice on the merits of Plaintiffs' theory, Applicants have more than met their minimal burden of showing Defendants' representation of Applicants' interest may be inadequate.

Moreover, even if the other Proposed Intervenors prevail in their motion, Applicants' interests will still not be adequately represented. As articulated *supra*, Applicants, which are all local jurisdictions, have interests in maintaining federal funding and the integrity of their internal political boundaries, which differ from the interests articulated by Proposed Intervenors'—individual voters and an organization—in preserving their political representation. As such, even if this Court grants Proposed Intervenors leave to intervene, Applicants' interests will remain unrepresented unless they are also permitted to intervene.

## II. Alternatively, Applicants Should Be Granted Permissive Intervention Under Federal Rule of Civil Procedure 24(b).

In addition to being entitled to intervene in this action as a matter of right, the Applicants request that this Court alternatively permit Applicants to intervene pursuant to Rule 24(b). When sought upon timely motion, permissive intervention is appropriate "where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Georgia*¸ 302 F.3d at 1250.

For the reasons stated above, *see supra* Part I.A, Applicants' motion is timely. Furthermore, Applicants easily meet the commonality standard as their defense to each of Plaintiffs' causes of action—which they must assert to protect their funding and apportionment interests set forth above—is that the Residence Rule is lawful under both

the Constitution and the Administrative Procedure Act.  *See* Ex. A (attached Answer).

Applicants seek to intervene on not only a common but an identical question of law.

Whereas Plaintiffs' Complaint avers that the "whole number of persons in each State"

must exclude undocumented persons for Census-counting purposes, Applicants seek to

defend that "persons in each State" must include undocumented persons in accordance

with longstanding practice and Supreme Court precedent.  *See Evenwel*, 136 S. Ct. at

1127–33.  Applicants thus propose to contest the relief sought by Plaintiffs as not allowed

under the Constitution or federal law—asserting a defense that plainly "share[s] with the

main action a common question of law" for purposes of Rule 24(b).[6]

     Moreover, intervention will neither unduly delay nor prejudice the adjudication of

the original parties' rights. Fed. R. Civ. P. 24(b)(3).  This litigation is still at the earliest

stages:  Plaintiffs filed their Complaint on May 21, 2018, and Defendants have yet to

answer or move upon the Complaint.  Defendants were not even served until June 4,

2018.  *See* Dkt. No. 5.  Defendants have until August 3, 2018 to respond.  Fed. R. Civ. P.

---

[6]    In addition, San José is a plaintiff in a suit in the U.S. District Court for the Northern District of California challenging actions by Defendants in this suit to add new and untested questions to the 2020 Census that will require that all United States residents disclose whether they are citizens.  *See* Compl., *City of San Jose et al. v. Ross et al.*, No. 5:18-cv-02279 (N.D. Cal., Apr. 17, 2018), Dkt. No. 1.  The California litigation and the instant litigation share similar concerns:  the California litigation puts at issue whether the posing of a citizenship question will decrease responses to the census questionnaire among immigrant groups and minority populations, thus resulting in decreases in congressional representation and federal funding, and this case raises similar questions related to the treatment of non-citizens in the census count.  *See Sunbelt Veterinary Supply, Inc. v. Int'l Bus. Sys. U.S., Inc.*, 200 F.R.D. 463, 466 (M.D. Ala. 2001) (permitting intervention where proposed intervenors' claims in an existing lawsuit shared common questions of law and fact with the underlying action).

Rule 12(a)(3).  Though the Proposed Intervenors filed a motion for leave to intervene on July 12, 2018, that motion has not been fully briefed.  As such, only Applicants would face prejudice from the Court denying their intervention and participation in the action and therefore should be permitted to intervene under Rule 24(b).

## CONCLUSION

For the foregoing reasons, Applicants respectfully request entry of an Order permitting them to intervene as of right, under Rule 24(a), or in the alternative, granting them permissive intervention under Rule 24(b).

Respectfully submitted,

Dated: July 17, 2018                    /s/      Anil A. Mujumdar

**ZARZAUR MUJUMDAR & DEBROSSE**
Anil A. Mujumdar (ASB-2004-L65M)
2332 Second Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
Email: anil@zarzaur.com

*Attorney for Defendant-Applicants,* CITY OF SAN JOSÉ and KING COUNTY

**DEBEVOISE & PLIMPTON LLP**
*Jyotin Hamid**
*Lauren M. Dolecki**
*Ming Ming Yang**
919 Third Avenue
New York, NY  10022
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836

Email: jhamid@debevoise.com

Ryan M. Kusmin*
801 Pennsylvania Avenue NW, Suite 500
Washington, DC 20001
Telephone:  (202) 383-8000
Facsimile:  (202) 383-8118
Email: rmkusmin@debevoise.com

**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW**
Ezra D. Rosenberg*
Dorian L. Spence*
1401 New York Avenue NW, Suite 400
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-9857
E-Mail: erosenburg@lawyerscommittee.org
        dspence@lawyerscommittee.org

**CITY OF SAN JOSÉ**
Richard Doyle, City Attorney*
Nora Frimann, Assistant City Attorney*
Office of the City Attorney
200 East Santa Clara Street, 16th  Floor
San José, California 95113-1905
Telephone: (408) 535-1900
Facsimile: (408) 998-3131
E-Mail: cao.main@sanjoseca.gov

Attorneys for Defendant-Applicant,
CITY OF SAN JOSÉ

*Application for Pro Hac Vice Admission
Pursuant to ALND L.R. 84.1(b)
Forthcoming

**DEMOCRACY FORWARD**
Javier M. Guzman*
Robin F. Thurston*
John T. Lewis*
Democracy Forward Foundation

P.O. Box 34553
Washington, DC 20043
Telephone: (202) 448-9090
Email: jguzman@democracyforward.org
        rthurston@democracyforward.org
        jlewis@democracyforward.org

*Attorneys for Defendant-Applicant*,
KING COUNTY

*\*Application for Pro Hac Vice Admission
Pursuant to ALND L.R. 84.1(b)
Forthcoming.*

**COPELAND FRANCO SCREWS &
GILL, P.A.**
Robert D. Segall (SEG003)
Post Office Box 347
Montgomery, AL  36101-0347
Phone: (334) 834-1180
Fax: (334) 834-3172
Email: segall@copelandfranco.com

**COUNTY OF SANTA CLARA**
*James R. Williams*, County Counsel*
*Greta S. Hansen**
*Danielle L. Goldstein**
*Marcelo Quiñones**
*Laura S. Trice**
Office of the County Counsel
County of Santa Clara
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
Email: danielle.goldstein@cco.ssgov.org
        marcelo.quinones@cco.ssgov.org

**LAW OFFICE OF
JONATHAN WEISSGLASS**
*Jonathan Weissglass**
410 12th Street, Suite 250-B
Oakland, CA 94607

Telephone: (510) 836-4200
E-mail: jonathan@weissglass.com

*Attorneys for Defendant-Applicant*,
County of Santa Clara, California

*\*Application for Pro Hac Vice Admission
Pursuant to ALND L.R. 84.1(b)
Forthcoming.*