FILED

2019 Jan-04  PM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| STATE OF ALABAMA, and MORRIS J. BROOKS, JR., Representative for Alabama's 5th Congressional District,<br>    *Plaintiff*s,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE; and WILBUR L. ROSS, in his official capacity as Secretary of Commerce<br><br>BUREAU OF THE CENSUS, an agency within the United States Department of Commerce; and RON S. JARMIN, in his capacity as performing the non-exclusive functions and duties of the Director of the U.S. Census Bureau,<br><br>    *Defendants*,<br><br>and<br><br>DIANA MARTINEZ; RAISA SEQUEIRA; SAULO CORONA; IRVING MEDINA; JOEY CARDENAS; FLORINDA P. CHAVEZ; and CHICANOS POR LA CAUSA;<br><br>COUNTY OF SANTA CLARA, CALIFORNIA; KING COUNTY, WASHINGTON; and CITY OF SAN JOSÉ, CALIFONRIA,<br><br>    *Defendant-Intervenors.* | Civil Action No. 2:18-cv-00772-RDP |

### MARTINEZ DEFENDANT-INTERVENORS' SUPPLEMENTAL MEMORANDUM

Plaintiffs seek abandonment of the Residence Rule and an order requiring Defendants to "use the best available methods to exclude" undocumented immigrants from the population figures sent for apportionment.  Complaint ¶ 158.  However, the potential intervening actions of unnamed and independent decision-makers – the Congress and/or the President – deprive Plaintiffs of the redressability required to sustain this action under Fed. R. Civ. P. 12(b)(1) and Article III of the Constitution.  Two analytically critical characteristics distinguish this action from others in which Commerce Department and Census Bureau can – and have been historically held to – provide the requisite redressability for purposes of standing.

First, Plaintiffs do not seek to change the actual conduct of the Census collection of information, or the actual "count," itself.  Thus, this case is unlike challenges pending elsewhere where the injury of a significantly undercounted population stems entirely from – and becomes complete and irreparable once the count itself concludes – the conduct of the Census count itself, including the content of the Census household questionnaire.  Here, Plaintiffs' injuries do not stem from the Census collection of information itself; moreover, Plaintiffs seem to understand that it is too late to alter the Census counting process itself to address their asserted injury – too late to include never-tested language on the questionnaire that would seek to exclude undocumented persons from a household report.  Instead, this case relates to tabulation and reporting of Census data, rather than the collection of the count itself.  For cases that challenge the counting process itself, the Bureau and Department are the only appropriate defendants to redress any asserted injury – through ordered changes in the counting process.  By contrast, cases like this one that challenge tabulation and reporting implicate other independent decision-makers – Congress and/or the President – who can frustrate any remedy put in place as to the Bureau and Department alone.

Second, unlike previous cases challenging Census tabulation and reporting, Plaintiffs here seek to force the creation of an adjusted second data set – adjusted by "best available methods" to exclude the undocumented rather than to prevent or bar the creation of an adjusted second data set.  If a plaintiff succeeds in preventing the creation of an adjusted Census data set to which she objects, she has as a practical matter succeeded in impeding, and perhaps even preventing, independent decision-makers – including Congress and the President – from deciding to use the alternative data set that was not created.  By contrast, here Plaintiffs seek the opposite – to force the creation of a second adjusted Census data set, designed to exclude the undocumented.  The unadjusted data set will still exist – indeed, it is the necessary prerequisite to creating the adjusted data set.  Rather than impeding the selection of an alternative data set by preventing its creation, successful Plaintiffs here would actually ensure that two data sets are readily available – an unadjusted Census total population set and an adjusted Census population set that attempts to exclude undocumented residents.  In this unusual circumstance, Plaintiffs' success will increase, not restrict the available choices for Congress and/or the President.

In this peculiar situation in which a plaintiff challenging tabulation and reporting of Census data seeks to create a second adjusted Census data set, Commerce Department and Census Bureau alone cannot provide redress to any asserted injury because these defendants will be ordered to create an adjusted data set that as a practical matter fails to impede Congress and/or the President from choosing – or being ordered by a court to choose – the available original unadjusted Census population data set.  Thus, the specific relief sought here differentiates previous cases and demonstrates why the Plaintiffs have named Defendants who cannot redress their asserted injuries.

2

## I.    Plaintiffs' Prayer for Relief Would Not Provide the Required Redressability From These Defendants.

Redressability is one of the "irreducible constitutional minimum" requirements of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). Unlike other requirements for standing, redressability focuses on the named defendants, who would be subject to any remedial order, rather than on the plaintiffs. Here, Plaintiffs have named only the Department of Commerce and its Secretary, as well as the Census Bureau and its acting director, as defendants. While these Commerce and Census defendants could relieve asserted injuries in other contexts, here they cannot provide redress for the injuries alleged in the Complaint.

### A. Plaintiffs Do Not Seek to Alter the Information Collection Process in the 2020 Census.

The Census Bureau and the Department of Commerce are responsible for conducting the decennial Census, including in 2020. They or their officers are therefore the appropriate defendants to provide relief for an injury arising from the conduct of the Census collection of data, or "count," itself; a court order directing defendants to alter their plans with respect to the counting of the population, whether in the questionnaire or in outreach or otherwise, would be addressed to and followed by the actual agency conducting the count. Where an injury arises from the actual count, such as in procedures that could trigger a significant undercount, Commerce and Census are the appropriate defendants, able to provide relief through implementation of any court-ordered changes in the data collection process. Here, however,

3

Plaintiffs do not seek a change in the counting process, but in what is done with the data collected through the Census count.

First, Plaintiffs' asserted injuries do not arise from the conduct of the count itself. They do not and could not allege that the count as currently constructed – including collecting information on all household residents regardless of status – would somehow change people's behavior or participation in a way that would harm Plaintiffs. Instead, Plaintiffs' asserted injuries emanate from the tabulation and reporting of data, rather than the conduct of the count itself.

Second, Plaintiffs seem to understand that it is too late to alter the counting process in a way that would prevent undocumented residents from being included in the data submitted by households nationwide in response to the mandatory decennial Census. For example, it is too late to introduce an untested question or direction in the Census questionnaire that could prevent undocumented residents from being listed in a household's Census response. Because Plaintiffs seek to alter the tabulation and reporting of data, rather than the actual gathering of count data, the Commerce and Census Defendants may not be the only appropriate defendants, as they would be in a challenge to the actual Census 2020 counting process.

**B.  Plaintiffs Do Not Seek to Prevent the Creation or Availability of Alternative Census Count Data.**

In previous cases, the United States Supreme Court has held that plaintiffs have standing to sue Commerce and Census defendants to prevent the creation of alternative, adjusted Census data sets where the adjustments would injure the plaintiffs' interests. In *Franklin v. Massachusetts*, for example, four justices concluded that the Secretary of Commerce could redress the plaintiffs' injury in a challenge to the Bureau's decision to adjust the Census data by allocating overseas federal employees to their home states. 505 U.S. 788, 803 (1992)

(O'Connor, J.).  Relying on *Franklin*, the Court later upheld plaintiffs' standing in a challenge to the imputation of certain data to fill in gaps in collected Census population information.  *Utah v. Evans*, 536 U.S. 452, 459-64 (2002).  Finally, in the Court decision rejecting the use of sampling methods to adjust the actual information collected in the Census, the Court affirmed plaintiffs' standing.  *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 328-34 (1999).

In these cases, preventing the creation or use of an alternative data set using the challenged adjustment methodology would have the practical effect of making it difficult or even impossible for any other policymaker to use the challenged adjusted data set because the Bureau would be barred by court order from creating or using it.  While theoretically possible, it is unlikely that any other agency or policymaker could or would take Census raw data and perform the adjustment itself.  Thus, a court order barring the Bureau from creating or using the adjusted data set would impede or prevent even independent policymakers from using the data that the plaintiffs allege to be injurious.

Here, Plaintiffs seek to do the precise opposite.  Plaintiffs seek to mandate the Bureau to create an adjusted Census data set using "the best available methods to exclude" the undocumented from the population data.  Plaintiffs do not seek – and no court could order defendants – to eliminate the unadjusted total Census population data set that includes undocumented residents.  Indeed, the existence of an unadjusted total population data set is a prerequisite to application of the remedy that Plaintiffs seek.  Unlike previous cases, then, the remedy here would ensure the existence of two data sets – the raw, unadjusted total population and the adjusted population excluding undocumented residents through some estimation methodology.

Because two data sets would be available, this case is in a decidedly different posture than those that seek to prevent the creation of alternative data. Of necessity, independent decision-makers, particularly constitutional officials, may choose to use the unadjusted total population data, rather than the adjusted data preferred by plaintiffs. Because those independent decision-makers are not defendants here, nothing ordered in this case could bar them from using unadjusted data. Indeed, regardless of their own preferences, these independent decision-makers could be compelled by court order in a later-filed case to use unadjusted data; because they are not named defendants here, the independent officials could not defend such a future suit by asserting issue preclusion or court compulsion.

**C. Congress and/or the President Are Unnamed Independent Decision-Makers Who Could Thwart Any Redress Ordered With Respect to Either Representational or Financial Injury.**

Congress and/or the President, neither of whose relevant agents are named as defendants here, are independent, intervening decision-makers who could thwart any remedy ordered as to the Commerce and Census defendants in this case.

The current statutory procedure for completing the constitutionally-mandated reapportionment of seats in the House of Representatives involves both the President and the Clerk of the House. *See* 2 U.S.C. § 2a. The President takes the data provided by the Commerce Department and transmits it to Congress. 2 U.S.C. § 2a(a). The Clerk of the House, in turn, transmits a notice to each of the states regarding the reapportioned House seats. 2 U.S.C. § 2a(b). First, it is important to note that the Congress could legislatively change this statutory process at any point between now and the end of 2020. Yet, even under the current statutory scheme, the President or Congress could demand the use of unadjusted total population data – or could be compelled in a future lawsuit to do the same. No relief in this case could prevent these

6

independent decision-makers from choosing or being compelled to thwart any redress ordered as to defendants in this case.

A similar conclusion applies to the distribution of federal funding according to Census data. Unlike reapportionment, here the scheme is entirely legislated; nothing in the Constitution requires the use of Census data in funding formulae. Thus, the Congress could choose – or be compelled by future court action – to change the funding formulae to use unadjusted total population data, rather than the adjusted data preferred by Plaintiffs. No remedial order in this case against the Commerce and Census defendants could prevent Congress (with or without the President's acquiescence) from thwarting the remedy plaintiffs seek for their alleged financial injury.

Thus, in this specific circumstance, Plaintiffs cannot demonstrate redressability from the named Defendants for their injuries. Because Plaintiffs challenge tabulation and reporting of data and, in doing so, seek to create an additional data set while not preventing the existence of the original data set, Congress and/or the President could bar or prevent any redress obtained in this case. Accordingly, Plaintiffs lack standing with respect to the named Defendants.

## II.     Plaintiffs Lack Standing for Their Alleged Financial Injury.

Beyond the redressability issue, Plaintiffs face additional barriers to standing to pursue their asserted financial injury. First, at this pleading stage of litigation, Plaintiffs have failed to include in their prayer for relief any remedy that would relieve the financial injury; all of the pleaded requests relate solely to the injuries they assert with respect to reapportionment. *See* Complaint ¶ 158. Failing to seek relief for their asserted injury strips the injury of any weight in determining Article III jurisdiction.

Second, in contrast to myriad allegations about the historical and projected effects of including the undocumented population on apportionment, Plaintiffs fail to allege any historical or projected effects of the Residence Rule on Alabama's receipt of federal funding under any federal funding program.  Instead, Plaintiffs merely allege, with only three specific examples, that numerous federal programs base funding in part on Census data, and that Alabama receives funds under the three cited programs.  *See* Complaint ¶¶ 75-80.  This does not suffice, even at the pleading stage, to meet the Plaintiffs' burden to show standing.  First, as even the Plaintiffs' own examples show, often the federal funding programs utilize a subset of the total population, based on, for example: age, *see* 45 C.F.R. § 98.63(a)(children under 13) and Complaint ¶ 79; projected growth, *see* 49 U.S.C. § 5340(c) (projected total population 15 years in future) and Complaint ¶ 77; or income and age, *see* 20 U.S.C. § 6333(c)(2) (children below poverty level).  With such different subsets or projections of total population involved in different federal funding formulae, Plaintiffs must allege the specific effects of exclusion or inclusion of undocumented residents on each population subset, and how those effects would alter Alabama's receipt of federal funding, in order to properly allege an Article III injury.

Absent more specific allegations of reduced funding, the Complaint fails to demonstrate any concrete and particularized injury, as is required by Article III; the financial injury, as pleaded in the Complaint, is conjectural and speculative.  *See Defenders of Wildlife*, 504 U.S. at 560 (setting forth injury requirements for standing).  "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  The Plaintiffs fail to allege an adequate financial injury to the state of Alabama.

Finally, to the extent the financial injury is presented as part of the state of Alabama's alleged *parens patriae* interests, *see* Complaint ¶ 9, it cannot be sustained.  "A State does not

have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). Of course, there are no allegations supporting *parens patriae* injury from the conjectured reduction in federal funding, but even if included in the Complaint, such allegations could not support standing for Alabama.

Dated: January 4, 2019

Respectfully submitted,
*/s/ Edward Still*

Edward Still
Bar. No. ASB-4786- I47W
still@votelaw.com
429 Green Springs Hwy STE 161-304
Birmingham, AL 35209
Telephone: (205) 320-2882
Facsimile: (205) 320-2882

James U. Blacksher
Bar No. ASB-2381-S82J
jblacksher@ns.sympatico.ca
P.O. Box 636
Birmingham, AL 35201
Telephone: (205) 591-7238
Facsimile: (866) 845-4395

Thomas A. Saenz (CA Bar No. 159430)*
Nina Perales (TX Bar No. 24005046)*
Denise Hulett (CA Bar No. 121553)*
Andrea Senteno (NY Bar No. 5285341)*
Julia A. Gomez (CA Bar No. 316270)*
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
tsaenz@maldef.org
nperales@maldef.org
dhulett@maldef.org
asenteno@maldef.org
jgomez@maldef.org

9

Counsel for Martinez Defendant-Intervenors
* *Admitted* Pro Hac Vice