# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

STATE OF ALABAMA, et al.,

       Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

       Defendants,

DIANA MARTINEZ, et al.,

       Defendant-Intervenors,

and

COUNTY OF SANTA CLARA,
CALIFORNIA, et al.,

       Defendant-Intervenors.

Case No.:  2:18-cv-00772-RDP

**PROPOSED DEFENDANT-INTERVENORS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR LEAVE TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

I.      Legal background............................................................................................................ 2

II.     Factual background ........................................................................................................ 4

III.    Movants for intervention................................................................................................ 6

ARGUMENT ........................................................................................................................... 6

I.      The Proposed Defendant-Intervenors should be permitted to intervene as of right
        under Rule 24(a)(2).......................................................................................................... 6

        A.      The motion to intervene is timely and will not unduly disrupt the litigation
                or prejudice the existing parties ....................................................................... 7

        B.      The Proposed Defendant-Intervenors have important, legally protected
                interests in this action...................................................................................... 10

        C.      Movants' ability to protect their interests may be impaired absent
                intervention ...................................................................................................... 13

        D.      The existing parties do not fully represent the Proposed Defendant-
                Intervenors' interests....................................................................................... 14

II.     In the alternative, the Proposed Defendant-Intervenors should be allowed to
        intervene by permission .................................................................................................. 18

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alabama v. U.S. Dep't of Commerce*,
   No. 18-cv-772-RDP, 2019 WL 2372234 (N.D. Ala. June 5, 2019) ...................................4, 13

*Baldrige v. Shapiro*,
   455 U.S. 345 (1982) .............................................................................................................2

*BCCA Appeal Group v. EPA*,
   355 F.3d 817 (5th Cir. 2003) .............................................................................................15

*Bradley v. Pinellas Cty. Sch. Bd.*,
   961 F.2d 1554 (11th Cir. 1992) ..................................................................................... 15-16

*Carey v. Klutznick*,
   637 F.2d 834 (2d Cir. 1980) ...............................................................................................12

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
   386 U.S. 129 (1967) ...........................................................................................................14

*Chiles v. Thornburgh*,
   865 F.2d 1197 (11th Cir. 1989) ........................................................................7-8, 10, 13-15

*City of Detroit v. Franklin*,
   4 F.3d 1367 (6th Cir. 1993) ...............................................................................................12

*City of New York v. U.S. Dep't of Commerce*,
   713 F. Supp. 48 (E.D.N.Y. 1989) ......................................................................................12

*City of Philadelphia v. Klutznick*,
   503 F. Supp. 663 (E.D. Pa. 1980) .....................................................................................12

*City of Willacoochee, Ga. v. Baldrige*,
   556 F. Supp. 551 (S.D. Ga. 1983) .....................................................................................12

*Clark v. Putnam Cty.*,
   168 F.3d 458 (11th Cir. 1999) ..................................................................................... 14-15

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551, 2561 (2019) .......................................................................... 2, 5, 12-13, 19

*Dep't of Commerce v. U.S. House of Representatives*,
   525 U.S. 316 (1999) ..................................................................................................... 11-12

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) .......................................................................................16-17

**Cases**                                                              **Page(s)**

*Evenwel v. Abbott*,
136 S. Ct. 1120 (2016) ............................................................................19

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
983 F.2d 211 (11th Cir. 1993) ..................................................................7

*Fed'n for Am. Immigration Reform v. Klutznick*,
486 F. Supp. 564 (D.D.C. 1980) (three-judge court)................................19

*Forest Cty. Potawatomi Cmty. v. United States*,
317 F.R.D. 6 (D.D.C. 2016).....................................................................13

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ................................................................17

*Georgia v. U.S. Army Corps of Engr's*,
302 F.3d 1242 (11th Cir. 2002) ....................................... 6-8, 10, 16, 18

*Glavin v. Clinton*,
19 F. Supp. 2d 543 (E.D. Va. 1998) (three-judge court) .........................12

*Huff v. Comm'r of IRS*,
743 F.3d 790 (11th Cir. 2014) ..........................................................10, 14

*McDonald v. E.J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) ..................................................................7

*New York v. U.S. Dep't of Commerce*,
351 F. Supp. 3d 502 (S.D.N.Y. 2019).................................................9, 12

*NRDC v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ................................................................17

*Roeder v. Islamic Rep. of Iran*,
333 F.3d 228 (D.C. Cir. 2003) ................................................................13

*Sierra Club v. City of San Antonio*,
115 F.3d 311 (5th Cir. 1997) ..................................................................17

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) ..............................................................14

*Texas v. Mosbacher*,
783 F. Supp. 308 (S.D. Tex. 1992) .........................................................12

*Town of Chester v. Laroe Estates*,
137 S. Ct. 1645 (2017)............................................................................13

**Cases**                                                    **Page(s)**

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ................................................................14

*United States v. Jefferson County*,
    720 F.2d 1511 (11th Cir. 1983) ...............................................9

*Universal Health Servs., Inc. v. Thompson*,
    363 F.3d 1013 (9th Cir. 2004) .................................................15

*Utah v. Evans*,
    536 U.S. 452 (2002) ................................................................10

*Utah v. Evans*,
    No. 2:01-cv-00292 (D. Utah May 3, 2001) (three-judge court) ............11

*Wesberry v. Sanders*,
    376 U.S. 1 (1964) ...................................................................19

*Wisconsin v. City of New York*,
    517 U.S. 1 (1996) ...............................................................2-3

*Worlds v. Dep't of Health & Rehab. Servs.*,
    929 F.2d 591 (11th Cir. 1991) ...............................................18

**Constitutional Provisions**

U.S. Const.
    amend. XIV, § 2................................................................2, 4
    art. I, § 2 ........................................................................2, 4
    art. II, § 1 .......................................................................2, 4

Mass. Const.
    amend. art. CI, §§ 1, 2................................................................11
    amend. art. CIX................................................................11
    amend. art. CXVII................................................................11
    amend. art. CXIX................................................................11

Nev. Const.
    art. IV, § 5................................................................11
    art. XV, § 13................................................................11

N.J. Const.
    art. IV, § 2................................................................11

**Constitutional Provisions** **Page(s)**

N.Y. Const.
    art. III, § 3 ...............................................................................11
    art. III, § 4 ...............................................................................11
    art. III, § 5 ...............................................................................11
    art. III, § 5-a ............................................................................11

Tex. Const.
    art. 3, § 26 ...............................................................................11

Vt. Const.
    Ch. II, § 13 ..............................................................................11
    Ch. II, § 18 ..............................................................................11
    Ch. II, § 73 ..............................................................................11

Wash. Const.
    art. II, § 43 ..............................................................................11

**Federal Statutes**

Pub. L. No. 105-119, 111 Stat. 2440 (1997)................................2

3 U.S.C. § 3 ..................................................................................2

13 U.S.C. § 4 ................................................................................2

13 U.S.C. § 141 ............................................................................2

**State and Local Statutes**

Cal. Elec. Code § 22000 .............................................................11

Chicago Municipal code § 2-8-300............................................11

D.C. Code § 1-1011.01 ...............................................................11

Va. Code Ann. § 30-265 .............................................................11

Vt. Stat. tit. 17, § 1902 ...............................................................11

Wash. Rev. Code § 29A.76.010 ..................................................11

Wash. Rev. Code § 44.05.090......................................................11

**Rules**

Fed. R. Civ. P. 24(a) ............................................................2, 7, 13

**Rules**                                                                                                  **Page(s)**

Fed. R. Civ. P. 24(b) ....................................................................................................2, 18

**Other Authorities**

2020 Census Operational Plan (Feb. 1, 2019), https://www.census.gov/programs-
    surveys/decennial-census/2020-census/planning-management/memo-
    series/2020-memo-2019_06.html ..............................................................................................3

Attorney General William P. Barr, Remarks on Census Citizenship Question (July
    11, 2019), https://www.justice.gov/opa/speech/remarks-attorney-general-
    william-p-barr-census-citizenship-question.....................................................................1, 5, 8

Collecting Information About Citizenship Status in Connection With the
    Decennial Census, Exec. Order 13,880, 84 Fed. Reg. 33,821 (July 16, 2019)..........................5

Final 2020 Census Residence Criteria and Residence Situations," 83 Fed. Reg.
    5525 (Feb. 8, 2018)..................................................................................................... 3, 15-16

6 Moore's Fed. Practice § 24.03[1][a] (3d ed. & Supp. 2019) ...................................................7, 16

## INTRODUCTION

The State of Alabama seeks extraordinary and unprecedented relief: an order from this Court directing that, for the first time in the history of the decennial census, undocumented immigrants be excluded from the "actual Enumeration" required by the Constitution.  If awarded, this relief would have profound consequences for the 26 states, cities, and counties who seek through this motion to participate as Defendant-Intervenors: it would reduce their representation in Congress, decrease their share of presidential electors in the Electoral College, skew the division of electoral districts within each state, and deprive them of billions of dollars in federal funds that serve critical public purposes for their most vulnerable residents.

Defendants will not fully represent the interests of the Proposed Defendant-Intervenors.  This Court has already characterized the Federal Defendants' defense of this case as "rather halfhearted."  Doc. # 53 at 6 n.2.  That characterization is consistent with the statement by the United States Attorney General, in a speech delivered from the White House just weeks ago, that the federal government was still "studying the issue" of "whether illegal aliens can be included for apportionment purposes," and needed to develop better estimates of the citizenship and lawful-presence status of the entire population because it may prove relevant to this litigation.  Attorney General William P. Barr, Remarks on Census Citizenship Question (July 11, 2019), https://www.justice.gov/opa/speech/remarks-attorney-general-william-p-barr-census-citizenship-question.  Moreover, the private and local government defendants that the Court previously permitted to intervene cannot fully represent the interests of residents in the 26 states, cities, and counties represented by Movants here.  Indeed, none of the current defendants is a state that stands to lose congressional seats or Electoral College votes directly if undocumented immigrants were to be excluded from the actual enumeration.

Movants therefore respectfully request that this Court grant their motion to intervene as of right under Fed. R. Civ. P. 24(a), or alternatively for permissive intervention under Fed. R. Civ. P. 24(b), to protect their interests and the interests of their residents.

## BACKGROUND

### I. Legal background.

The Constitution requires an "actual Enumeration" of the population every ten years to count "the whole number of persons in each State," in order to apportion Members of the House of Representatives among the states. U.S. Const. art. I, § 2, cl. 3; *id.* amend. XIV, § 2. The "decennial enumeration of the population is one of the most critical constitutional functions our Federal Government performs." Pub. L. No. 105-119, § 209(a)(5), 111 Stat. 2440, 2481 (1997). The "population count derived from the census is used not only to apportion representatives but also to allocate federal funds to the States and to draw electoral districts." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2561 (2019). The census "additionally serves as a means of collecting demographic information, which 'is used for such varied purposes as computing federal grant-in-aid benefits, drafting of legislation, urban and regional planning, business planning, and academic and social studies.'" *Id.* (quoting *Baldrige v. Shapiro*, 455 U.S. 345, 353-54 & n.9 (1982)). Population figures generated by the census also determine the allocation among the states of electors in the Electoral College. 3 U.S.C. § 3; *see also* U.S. Const. art. II, § 1, cl. 2.

Congress has assigned its duty to conduct the decennial enumeration to the Secretary of Commerce and Census Bureau. 13 U.S.C. §§ 4, 141(a). Their obligation is to obtain a total-population count that is "as accurate as possible, consistent with the Constitution" and the law. Pub. L. No. 105-119, § 209(a)(6), 111 Stat. at 2481; *see Wisconsin v. City of New York*, 517 U.S.

1, 20 (1996) (decisions must bear "a reasonable relationship to the accomplishment of an actual enumeration of the population").

To carry out this mandate to conduct a complete and accurate count, the Census Bureau conducts extensive planning over the course of each decade, and promulgates various criteria that govern the conduct of the census. *See generally* 2020 Census Operational Plan (Feb. 1, 2019), at https://www.census.gov/programs-surveys/decennial-census/2020-census/planning-management/memo-series/2020-memo-2019_06.html. Among these enumeration procedures is the Final 2020 Census Residence Criteria and Residence Situations, which was finalized in February 2018 and is used to "determine where people are counted during each decennial census." 83 Fed. Reg. 5525, 5526 (Feb. 8, 2018) ("For a fair and equitable apportionment, it is crucial that the Census Bureau counts everyone in the right place during the decennial census.").

This procedure (the "Residence Rule") provides that the state and specific location where each person resides are "determined in accordance with the concept of 'usual residence,'" which the Census Bureau defines as "the place where a person lives and sleeps most of the time." *Id.* (noting that the concept of "usual residence" is "grounded in the law providing for the first census, the Act of March 1, 1790, expressly specifying that persons be enumerated at their 'usual place of abode'"). As relevant here, the Residence Rule requires that citizens of foreign countries living in the United States be counted "at the U.S. residence where they live and sleep most of the time," without regard for their immigration status.[1] *Id.* at 5533 (Section C.3); *see also id.* at 5530.

---

[1] As distinct from foreign citizens living in the United States, the Residence Rule provides that foreign citizens who are simply visiting the United States, such as on a vacation or business trip, are not counted in the census. 83 Fed. Reg. at 5533 (Section C.3.c).

## II. Factual background.

The State of Alabama and U.S. Representative Morris J. Brooks, Jr. filed this lawsuit in May 2018 seeking to vacate and set aside the Residence Rule on the grounds that including undocumented immigrants in the total population count resulting from the decennial census violates the Administrative Procedure Act and the U.S. Constitution (specifically, Section 2 of the Fourteenth Amendment, the Census Clause of Article I, § 2, and the Electoral Apportionment Clause of Article II, § 1).  *See* Complaint, Doc. # 1 at 31-34, ¶¶ 140-157.  Plaintiffs alleged that the inclusion of undocumented immigrants in the total population count would cause representational injuries in the form of lost political representation in Congress and the Electoral College, and would further injure Alabama by causing the state to lose federal and private funds.  *See id.* at 15-19, ¶¶ 50-86.

Two groups of intervenors sought intervention as defendants: the Martinez Intervenors (individual voters alleging representational harm and vote dilution if undocumented immigrants are excluded from the population count, and an organization whose mission is to increase Latino political participation), *see* Doc. # 6-2 at 1, 6-7; and the Local Government Intervenors (the County of Santa Clara, California; King County, Washington; and the City of San José, California), *see* Doc. # 9 at 5-7.  This Court granted permissive intervention to both sets of movants by opinion and order dated December 13, 2018.  Docs. # 53, 54.

The Federal Defendants—the U.S. Department of Commerce, the Census Bureau, and the Commerce Secretary and Census Director in their official capacities—moved to dismiss Plaintiffs' complaint for lack of Article III standing.  Doc. # 45.  On June 5, 2019, the Court denied the motion to dismiss and held that Plaintiffs adequately alleged standing based on their claimed representational injuries.  *See Alabama v. U.S. Dep't of Commerce*, No. 18-cv-772-RDP, 2019 WL 2372234, at *4-10 (N.D. Ala. June 5, 2019).

In separate litigation, on June 27, 2019, the Supreme Court held that the Commerce Secretary's decision to add a citizenship question to the 2020 decennial census should be set aside and remanded because it rested on a pretextual basis. *New York*, 139 S. Ct. at 2573-76. In response, on July 11, 2019, the President issued an Executive Order stating that because "[t]he [Supreme] Court's ruling . . . has now made it impossible, as a practical matter, to include a citizenship question on the 2020 decennial census questionnaire," federal agencies should instead assist the Department of Commerce in "[e]nsuring that the Department has available the best data on citizenship that administrative records can provide." *Collecting Information About Citizenship Status in Connection With the Decennial Census*, Exec. Order 13,880, § 1, 84 Fed. Reg. 33,821, 33,821-22 (July 16, 2019). The Executive Order identified a number of purposes for this information, including to "generate a more reliable count of the unauthorized alien population in the country." *Id.* at 33,822-23. In public remarks from the White House accompanying the President's announcement of this Executive Order, the Attorney General explained that the instant litigation was one of the reasons the federal government needed to compile better data regarding the number of noncitizens and undocumented immigrants residing in the country:

> The course the President has chosen today will bring unprecedented resources to bear on determining how many citizens and non-citizens are in our country and will yield the best data the government has had on citizenship in many decades. That information will be useful for countless purposes, as the President explained in his remarks today. For example, there is a current dispute over whether illegal aliens can be included for apportionment purposes. Depending on the resolution of that dispute, this data may possibly prove relevant. We will be studying the issue.

Attorney General William P. Barr, Remarks on Census Citizenship Question (July 11, 2019).

One week later, on July 19, 2019, the Federal Defendants filed their answer to Plaintiffs' complaint in this litigation. Doc. # 90. The Federal Defendants' answer raised no affirmative

defenses.  *See id.* at 18.  On August 6, the Court set a status conference for September 6 and directed the parties to submit a joint report by September 3 "stating their respective positions on how this case should proceed."  Doc. # 95.

### III.    Movants for intervention.

Movants are 16 states (New York, California, Colorado, Connecticut, the District of Columbia, Illinois, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Virginia, Washington), 9 cities and counties (Cameron County, Texas; Central Falls, Rhode Island; Chicago, Illinois; Hidalgo County, Texas; Monterey County, California; New York, New York; Philadelphia, Pennsylvania; Providence, Rhode Island; Seattle, Washington), and the United States Conference of Mayors, collectively referred to here as the "Proposed Defendant-Intervenors."

As described in greater detail below, the Proposed Defendant-Intervenors have a significant stake in the outcome of this litigation because it will affect their political representation in Congress and the Electoral College, their ability to draw accurate district lines within their states and local political subdivisions, and their eligibility for federal funds that are distributed on the basis of census-derived population figures.

### ARGUMENT

### I.    The Proposed Defendant-Intervenors should be permitted to intervene as of right under Rule 24(a)(2).

The Proposed Defendant-Intervenors satisfy the requirements for intervention as of right under Rule 24(a)(2).  A party is entitled to intervene as a matter of right if the motion to intervene is timely, the movant shows an interest in the subject matter of the suit, the movant's "ability to protect that interest may be impaired by the disposition of the suit," and "existing parties in the suit cannot adequately protect that interest."  *Georgia v. U.S. Army Corps of*

*Engr's*, 302 F.3d 1242, 1250 (11th Cir. 2002); *see* Fed. R. Civ. P. 24(a)(2).  Rule 24 is to be

construed liberally, with any doubts resolved in favor of the proposed intervenor.  *See Fed. Sav.*

*& Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993); *see*

*also* 6 Moore's Fed. Practice § 24.03[1][a] & n.4 (3d ed. & Supp. 2019).

> **A.** **The motion to intervene is timely and will not unduly disrupt the litigation or prejudice the existing parties.**

Movants meet the timeliness requirement for intervention under Rule 24.  In determining

whether a motion to intervene is timely, courts consider:

> (1) the length of time during which the proposed intervenor knew or reasonably
> should have known of the interest in the case before moving to intervene; (2) the
> extent of prejudice to the existing parties as a result of the proposed intervenor's
> failure to move for intervention as soon as it knew or reasonably should have
> known of its interest; (3) the extent of prejudice to the proposed intervenor if the
> motion is denied; and (4) the existence of unusual circumstances militating either
> for or against a determination that their motion was timely.

*Georgia*, 302 F.3d at 1259 (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

In assessing these factors, courts must bear in mind that "[t]he requirement of timeliness must

have accommodating flexibility toward both the court and the litigants if it is to be successfully

employed to regulate intervention in the interest of justice."  *Chiles*, 865 F.2d at 1213 (quoting

*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).  Movants satisfy all four

factors.

First, Movants acted expeditiously in moving to intervene.  The Court denied the Federal

Defendants' motion to dismiss less than two months ago, *see* Docs. # 84, 85; the defendants filed

their answers to the complaint just a few weeks ago, *see* Docs. # 90, 91, 92; and no discovery has

yet taken place.  Moreover, because the Federal Defendants' motion to dismiss addressed solely

the issue of Plaintiffs' Article III standing, *see* Doc. # 45, the parties have yet to engage in any

potentially dispositive motions practice addressing the merits of Plaintiffs' claims.  Given the

preliminary stage of these proceedings, the Proposed Defendant-Intervenors' application to intervene is not unreasonably delayed. *See Chiles*, 865 F.2d at 1213 (reversing the district court's denial of intervention and holding that motion to intervene was timely where it was filed "before any discovery had begun"). In addition, recent and significant intervening developments have made clear the need for the Proposed Defendant-Intervenors to seek to participate in this litigation to protect their interests: namely, as noted above, the Attorney General's announcement on July 11 that the federal government was still studying the issue of "whether illegal aliens can be included for apportionment purposes," and would therefore bolster its efforts to "develop complete data on the number of . . . illegal aliens in the country" because it may prove relevant to this litigation. Attorney General William P. Barr, Remarks on Census Citizenship Question (July 11, 2019). This motion to intervene follows that announcement by just a few weeks.

Second, the existing parties will not suffer any prejudice if this motion to intervene is granted. The Court has not entered a scheduling order, and the parties have not yet presented the Court with their joint report regarding how this litigation should proceed. *See* Docs. # 93, 95 (directing the parties to submit a joint report by September 3 stating their respective positions regarding how this case should proceed); *see also* Doc. # 87 at 91 (Transcript of May 24, 2019 hearing) (parties agreeing with the Court that the best course "if you were to get past standing [would] be to have the parties meet and confer and give [the Court] a joint report about the best way to move forward . . . and then do pretrial orders based upon that report"). The Proposed Defendant-Intervenors are prepared to confer with the parties on the joint report and to participate as proposed intervenors in the upcoming scheduling conference (with the Court's leave), and will comply with any deadlines the Court sets in the interest of adequately protecting the existing litigants' rights. *See Georgia*, 302 F.3d at 1259-60 (holding that motion to intervene

was timely and non-prejudicial where "intervention did not delay the proceedings and the court had yet to take significant action").

Third, the Proposed Defendant-Intervenors would likely suffer prejudice if their motion to intervene is denied. In evaluating this factor, "the thrust of the inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party." *United States v. Jefferson County*, 720 F.2d 1511, 1517 (11th Cir. 1983). Here, the relief Plaintiffs seek would directly and necessarily affect the states and local governments that seek to intervene in this litigation: vacatur of the Residence Rule and the exclusion of undocumented immigrants from the total population count would, by Plaintiffs' theory and requested relief, increase Alabama's relative population, political power, and entitlement to census-derived federal funds only because it would *decrease* the relative population, political power, and federal funds eligibility of the Proposed Defendant-Intervenors. Doc. # 1 at 15-20, 31-34, ¶¶ 50-86, 140-158; Doc. #53 at 5-6 (order granting permissive intervention). As Plaintiffs acknowledge in their complaint, "reapportionment of House seats and electoral votes is a zero sum proposition: Each state's gain is another state's loss." Doc. # 1 at 11, ¶ 32. And any judgment in Plaintiffs' favor that vacated the Residence Rule would likely apply nationwide regardless of Movants' participation or non-participation as a party: As Judge Furman held in vacating the Commerce Secretary's decision to add a citizenship question to the decennial census, "[b]ecause the Secretary's *decision* was universal, APA relief directed at that decision may—indeed, arguably must—be too." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019).[2]

---

[2] As explained in Part I.D below, the presence of other defendant-intervenors in this litigation does not mitigate this risk because none can fully represent the interests of the 26 states and municipal governments that seek to intervene as the Proposed Defendant-Intervenors.

Finally, no unusual circumstances counsel against intervention. On the contrary, this Court has already recognized the need for parties with unique interests to intervene to protect those interests in this case. Doc. # 53. The same result should follow here.

**B.    The Proposed Defendant-Intervenors have important, legally protected interests in this action.**

Rule 24(a)(2) also requires movants to show that their "interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia*, 302 F.3d at 1249. The Eleventh Circuit has instructed that "[i]n deciding whether a party has a protectable interest, . . . courts must be 'flexible' and must 'focus[] on the particular facts and circumstances' of the case." *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (quoting *Chiles*, 865 F.2d at 1214)). The Proposed Defendant-Intervenors have numerous legally protected interests that are directly implicated by the subject matter of this lawsuit, including the same representational and funding interests that Plaintiffs themselves have alleged are at stake in the litigation.

For example, according to Plaintiffs' complaint, the relief Plaintiffs seek would directly reduce California's representation in Congress and the Electoral College, injuring the representational interests of proposed intervenors the State of California and Monterey County, California. *See* Doc. # 1 at 16, ¶ 63. Plaintiffs' complaint also alleges that the relief Plaintiffs seek would directly reduce Texas's representation in Congress and the Electoral College, injuring the representational interests of proposed intervenors Cameron County, Texas and Hidalgo County, Texas. Movants' preliminary analysis further shows that proposed intervenors the States of New York and New Jersey may also lose representation in Congress if the total population count for apportionment purposes is altered as Plaintiffs seek. These representational interests alone are sufficient to support intervention of right. *See Utah v. Evans*, 536 U.S. 452, 459 (2002) (noting North Carolina's intervention in Utah's lawsuit following the 2000 census,

where Utah challenged a census practice that caused it to lose one congressional representative to North Carolina); Order Granting Intervention, *Utah v. Evans*, No. 2:01-cv-00292, Doc. # 16 at 2 (D. Utah May 3, 2001) (three-judge court); *see also* Doc. # 53 at 6 (recognizing that the Martinez Intervenors presented an interest sufficient to intervene based on assertions that their voting strength and representation in the House of Representatives and Electoral College could be negatively affected).

The Proposed Defendant-Intervenors also have protectable interests in their ability to draw accurate districting lines for congressional, state, or local legislative districts, particularly where they are required by state constitutional or statutory provisions to use the total population count from the decennial census as the basis for redistricting within their jurisdictions. *See, e.g.*, *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 333-34 (1999). Proposed intervenor the Commonwealth of Virginia, for example, must comply with a state-law requirement that "[f]or the purposes of redrawing the boundaries of the congressional, state Senate, and House of Delegates districts after the United States Census for the year 2000 and every 10 years thereafter, the General Assembly shall use the population data provided by the United States Bureau of the Census identical to those from the actual enumeration conducted by the Bureau for the apportionment of the Representatives of the United States House of Representatives following the United States decennial census . . . ." Va. Code Ann. § 30-265. Many of the other Proposed Defendant-Intervenors have comparable laws.[3] The subject matter of this litigation will thus directly affect Movants' interest in drawing accurate and equipopulous districts while still complying with state or local law. *See Dep't of Commerce*, 525 U.S. at 333-

---

[3] *See, e.g.*, Cal. Elec. Code § 22000; Chicago Municipal code § 2-8-300; D.C. Code § 1-1011.01; Mass. Const. Amend. art. CI, §§ 1, 2, arts. CIX, CXVII, CXIX; Nev. Const. art. IV, § 5, art. XV, § 13; N.J. Const. art. IV, § 2, ¶¶ 1, 3; N.Y. Const. art. III, §§ 3-5, 5-a; Tex. Const. art. 3, § 26; Vt. Const. Ch. II, §§ 13, 18, 73; Vt. Stat. tit. 17, § 1902; Wash. Const. art. II, § 43; Wash. Rev. Code §§ 29A.76.010, 44.05.090.

34; *see also* Doc. # 53 at 6 (recognizing the Local Government Intervenors' interests in their "ability to maintain accurate internal political boundaries").

The Proposed Defendant-Intervenors also have a direct, substantial, and legally protectable interest in receiving their fair share of federal funds that are distributed on the basis of the total population count from the decennial census. At least 320 federal domestic financial assistance programs rely on census data to allocate money; in fiscal year 2016, these programs "allocated about $900 billion using census-derived data." *New York*, 351 F. Supp. 3d at 596. Numerous courts have held that states and municipal governments have a protectable interest in the equitable distribution of these federal funds based on the census enumeration. *New York*, 139 S. Ct. at 2565-66; *City of Detroit v. Franklin*, 4 F.3d 1367, 1375 (6th Cir. 1993); *Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980); *Glavin v. Clinton*, 19 F. Supp. 2d 543, 550 (E.D. Va. 1998) (three-judge court); *Texas v. Mosbacher*, 783 F. Supp. 308, 313-14 (S.D. Tex. 1992); *City of New York v. U.S. Dep't of Commerce*, 713 F. Supp. 48, 50 (E.D.N.Y. 1989); *City of Willacoochee, Ga. v. Baldrige*, 556 F. Supp. 551, 554 (S.D. Ga. 1983); *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980). Here, again, the subject matter of this litigation will directly affect the Proposed Defendant-Intervenors' protectable interest in their fair share of federal funds, because Plaintiffs' complaint explicitly seeks the redistribution of funds to Alabama and away from states and localities with a higher relative share of the undocumented immigrant population, like the Movants here. Doc. # 1 at 18-20, ¶¶ 73-76.

Indeed, the Supreme Court recently held in the census citizenship question litigation that each of these interests—including diminishment of political representation and loss of federal funds—presented concrete and particularized injuries to the states and local governments sufficient to meet the requirements for Article III standing. *See New York*, 139 S. Ct. at 2565-66

(affirming the district court's finding that "States with a disproportionate share of noncitizens [and that] anticipate losing a seat in Congress or qualifying for less federal funding if their populations are undercounted" would suffer injuries sufficient to establish standing).  Although movants for intervention in this Circuit are not required to establish Article III standing in order to meet the Rule 24 standard,[4] *see Chiles*, 865 F.2d at 1213, cases that address standing "are relevant to help define the type of interest that the intervenor must assert," *id.*  The fact that the Proposed Defendant-Intervenors' interests in this litigation would suffice for constitutional standing purposes, *see New York*, 139 S. Ct. at 2565-66, thus demonstrates that the Proposed Defendant-Intervenors have protectable interests in this litigation under the Rule 24(a) standard. *See Chiles*, 865 F.2d at 1214; *accord Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 n.4 (D.D.C. 2016) ("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.") (quoting *Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)).

### C.  Movants' ability to protect their interests may be impaired absent intervention.

The Proposed Defendant-Intervenors must also show that disposition of the action "may as a practical matter impair or impede [their] ability to protect [their] interest" in the litigation. Fed. R. Civ. P. 24(a)(2).  This inquiry is "closely related" to the nature of movants' interest in the litigation, discussed above.  *Chiles*, 865 F.3d at 1214.  Among other showings, the "potential

---

[4] The Supreme Court recently held that an intervenor of right "must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff." *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1648 (2017).  Assuming this principle would apply to proposed defendant-intervenors, it presents no barrier to intervention here both because the Proposed Defendant-Intervenors seek the same relief as defendants already present in this action, and in any event the Proposed Defendant-Intervenors satisfy Article III for the reasons noted. *See also Alabama*, 2019 WL 2372234, at *4-10.

*stare decisis* effect may supply that practical disadvantage which warrants intervention as of right."  *Id.*; *see also Huff*, 743 F.3d at 800.

Applying this standard, this Court should conclude that the Proposed Defendant-Intervenors' interests will be impaired absent intervention in this litigation.  As a practical matter, a final judgment from this Court vacating the Residence Rule or enjoining the Federal Defendants from including undocumented immigrants in the total population count that results from the decennial census, *see* Doc. # 1 at 34, ¶ 158 (prayer for relief), would seriously impair the Proposed Defendant-Intervenors' ability to protect their representational and funding interests.  A judgment affecting the apportionment of Members of the House of Representatives among the states, for example, with no opportunity for the affected Movants to defend their entitlement to that same congressional representation, would at minimum have a potentially persuasive *stare decisis* effect in any separate litigation the Proposed Defendant-Intervenors may be compelled to pursue if intervention is not allowed.  *See Huff*, 743 F.3d at 800 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.") (quoting *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134 n.3 (1967)).

**D.      The existing parties do not fully represent the Proposed Defendant-Intervenors' interests.**

The final prong of the Rule 24(a)(2) test for intervention of right requires a prospective intervenor to show that no party to the action can be an adequate representative of its interests. This requirement is "minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (movant for intervention "need only show that the current [defendant's] representation 'may be inadequate,' . . . and the burden for making such a showing is 'minimal'") (quoting *Clark v.*

*Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999)).  Accordingly, movants ordinarily "should be allowed to intervene unless it is clear that [the existing defendants] will provide adequate representation."  *Chiles*, 865 F.2d at 1214.

In addition, although courts sometimes presume adequacy of representation "when an existing party seeks the same objectives as the would-be interveners," this presumption is "weak" and "merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary."  *Clark*, 168 F.3d at 461.  The Proposed Defendant-Intervenors more than exceed their minimal burden to show that no existing party can fully represent their interests.

As an initial matter, there is at least "some evidence" that the Federal Defendants likely do not share the same ultimate objective as the Proposed Defendant-Intervenors.  As cited above, the Attorney General's pronouncement last month that the federal government is "studying the issue" of "whether illegal aliens can be included for apportionment purposes" indicates that the Federal Defendants are still considering how and whether to defend this action.  The Proposed Defendant-Intervenors, by contrast, will fully defend the lawfulness of the Resident Rule as it relates to the usual residence of noncitizens living in the United States on census day.  Moreover, this Court has already noted the Federal Defendants' "rather halfhearted" defense of this litigation, including the possibility that the Federal Defendants "overlooked a key argument as to why Plaintiffs lack Article III standing."  Doc. # 53 at 6 n.2.  This observation alone supports a finding that movants' interests are not fully represented.[5]  *See Bradley v. Pinellas Cty. Sch. Bd.*,

---

[5] The record also demonstrates that the Federal Defendants have to date failed to raise any defense based on waiver of Plaintiffs' claims.  It is "a basic tenet of administrative law generally" that "th[e] court will not consider questions of law which were neither presented to nor passed on by the agency."  *BCCA Appeal Group v. EPA*, 355 F.3d 817, 828-29 (5th Cir. 2003); *see also Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004) ("[A] party's failure to make an argument before the administrative agency in comments on a proposed rule bar[s] it from raising that argument on judicial review.").  The Residence Rule received nearly 78,000 public comments in two rounds of notice and comment between 2015 and 2018, *see* 83 Fed. Reg. at 5526; three of those comments

961 F.2d 1554, 1557-58 (11th Cir. 1992) (reversing denial of intervention in school desegregation case where intervenors raised issues ignored by existing parties); *see also* 6 Moore's Fed. Practice § 24.03[4][a] (3d ed. & Supp. 2019) ("[W]hen there is a showing that the existing parties are ignoring or refusing to argue an important issue, . . . intervention is then appropriate.").

Even assuming the Federal Defendants do share the same ultimate objective of upholding the Residence Rule and including all residents in the country in the total population count conducted by the decennial census, the Proposed Defendant-Intervenors—as states and municipal governments—have unique sovereign and public interests owed to their own residents and not shared by other litigants, including the federal government. *See, e.g.*, *Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986). In particular, the Proposed Defendant-Intervenors have specific interests related to their own rights to fair political representation and the distribution of federal funds that no other party shares. In an analogous circumstance, the Eleventh Circuit held that the district court should have permitted the State of Florida to intervene as a defendant in an action filed by the State of Georgia against a federal agency (the U.S. Army Corps of Engineers) because "Florida's interest is to ensure that Georgia's actions do not deprive Florida of its equitable share of water. That interest is not represented by the Corps, which has no independent stake in how much water reaches the Apalachicola." *Georgia*, 302 F.3d at 1256.

---

related to foreign citizens in the United States, *id.* at 5530; and of those three, the single comment that appears remotely relevant expressed concern about including undocumented people in the *redistricting* process—not apportionment—because of the risk of gerrymandering, *see id.* There is no evidence in this record that Plaintiffs' claim of constitutional infirmity in including undocumented immigrants in the apportionment count was ever presented to the agency.

For the same reasons, neither the Martinez Intervenors nor the Local Government Intervenors can fully represent the interests presented by the Proposed Defendant-Intervenors. Private litigants like the Martinez Intervenors do not share the distinct governmental interests that movants present as states and municipal governments, even when they may share common objectives in this lawsuit. *See, e.g., Dimond*, 792 F.2d at 192-93. In addition, the Local Government Intervenors are charged by law with representing the interests of their own residents, and cannot be presumed to represent the interests of residents in the 26 other states, cities, and counties represented by the Proposed Defendant-Intervenors. *See id.*; *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-37 & n.9 (D.C. Cir. 2003) ("We have often held that governmental entities do not adequately represent the interests of aspiring intervenors.") (citing cases); *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (permitting state to intervene in light of state's claim of "important sovereign interest" in protecting and enforcing its own statutory scheme). And because none of the Martinez Intervenors or Local Government Intervenors are states, they do not share the unique sovereign interests of the Proposed Defendant-Intervenors that are states.

Further, the Proposed Defendant-Intervenors will be able to contribute significantly to the full development of any underlying factual issues as this litigation proceeds. *See NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (holding that movants for intervention met their "minimal burden" to show inadequacy of representation where their focused interest and experience regarding specific factual matters could contribute to the district court's "informed resolution of these questions"). The states and local governments that seek here to intervene can offer additional facts about the impact in their jurisdictions of any changes to the method of

determining the "usual residence" of persons living in the United States, as well as the harms to their residents that would attend a reduction in their share of federal funds for public programs.

## II.     In the alternative, the Proposed Defendant-Intervenors should be allowed to intervene by permission.

The Proposed Defendant-Intervenors request that the Court alternatively grant them permission to intervene in this suit pursuant to Rule 24(b).  The Court may grant permissive intervention to anyone who, on timely motion, asserts "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The determination whether to grant a motion for permissive intervention is "wholly discretionary with the court." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991).  In exercising this broad discretion, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *see also Georgia*, 302 F.3d at 1250.

The Proposed Defendant-Intervenors satisfy the requirements for permissive intervention. First, as set forth above, Movants have timely sought to intervene, and their participation will not delay this litigation.  Second, Movants' defenses will share common questions of both fact and law with the claims and defenses in this litigation.  The Proposed Defendant-Intervenors will defend the Residence Rule, and the inclusion of undocumented immigrants in the total population count that results from the decennial census, based on the same law and facts that the existing parties to the litigation have already raised.  *See* Doc. # 53 at 6.  Specifically, Movants argue that the Residence Rule is lawful under both the Constitution and the Administrative Procedure Act, and that nothing in the text or history of Article I as amended by the Fourteenth Amendment indicates any limitation on the "actual Enumeration" to exclude undocumented immigrants from the "whole number of persons" in each state.  *See* Movants' Proposed Answer

and Defenses to Plaintiffs' Complaint at 20-23, ¶¶ 140-165; *see also New York*, 139 S. Ct. at 2566-67 (rejecting Enumeration Clause challenge to the inclusion of a citizenship question on the decennial census, and "declin[ing] respondents' invitation to measure the constitutionality of the citizenship question by a standard that would seem to render every census since 1790 unconstitutional"); *Evenwel v. Abbott*, 136 S. Ct. 1120, 1129 (2016) (explaining that the history of the Constitutional Convention and the Fourteenth Amendment make clear "our Constitution's plain objective of making equal representation for *equal numbers of people* the fundamental goal for the House of Representatives" (quoting *Wesberry v. Sanders*, 376 U.S. 1, 18 (1964))); *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 575-76 (D.D.C. 1980) (three-judge court) ("The defendants' interpretation of the constitutional language is bolstered by two centuries of consistent interpretation. The Census Bureau has always attempted to count every person residing in a state on census day, and the population base for purposes of apportionment has always included all persons, including aliens both lawfully and unlawfully within our borders.").

## CONCLUSION

For the foregoing reasons, the Proposed Defendant-Intervenors respectfully request that the Court grant their motion to intervene in this action.

DATED: August 12, 2019                    Respectfully submitted,

                                          LETITIA JAMES
                                          *Attorney General of the State of New York*

*/s/ Joyce White Vance*                   By: */s/ Matthew Colangelo*
Joyce White Vance                         Matthew Colangelo*
101 Paul W. Bryant Drive                     *Chief Counsel for Federal Initiatives*
Tuscaloosa, AL 35487                      Elena Goldstein,* *Senior Trial Counsel*
jvance@law.ua.edu                         Elizabeth Morgan*
                                             *Assistant Attorney General*

19

/s/ Barry A. Ragsdale
Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Phone: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com

Ajay Saini,* *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State of New York*


XAVIER BECERRA
*Attorney General of California*

PHILIP J. WEISER
*Attorney General of the State of Colorado*

/s/  Gabrielle D. Boutin
Gabrielle D. Boutin*
  *Deputy Attorney General*
Anthony R. Hakl
  *Supervising Deputy Attorney General*
R. Matthew Wise, *Deputy Attorney General*
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Phone: (916) 210-6053
Gabrielle.Boutin@doj.ca.gov

*Attorneys for the State of California*

Eric R. Olson, *Solicitor General*
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6548
eric.olson@coag.gov

*Attorneys for the State of Colorado*


WILLIAM TONG
*Attorney General of Connecticut*

KARL A. RACINE
*Attorney General for the District of Columbia*

Mark F. Kohler, *Assistant Attorney General*
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06106
Phone: (860) 808-5020
Mark.Kohler@ct.gov

*Attorneys for the State of Connecticut*

Valerie M. Nannery
  *Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for
the District of Columbia
441 4th Street, N.W., Suite 630 South
Washington, DC 20001
Phone: (202) 724-6610
valerie.nannery@dc.gov

*Attorneys for the District of Columbia*

KWAME RAOUL
*Attorney General of the State of Illinois*

Jeff VanDam, *Public Interest Counsel*
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, IL 60601
Phone: (312) 814-1188
JVanDam@atg.state.il.us

*Attorneys for the State of Illinois*

MAURA HEALEY
*Attorney General of the Commonwealth of Massachusetts*

By: */s/ Ann E. Lynch*
Ann E. Lynch,* *Assistant Attorney General*
Miranda Cover,* *Assistant Attorney General*
Public Protection & Advocacy Bureau
Massachusetts Attorney General's Office
One Ashburton Place
Boston, MA 02108
Phone: (617) 727-2200
Ann.lynch@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

KEITH ELLISON
*Attorney General of the State of Minnesota*

Jacob Campion, *Assistant Attorney General*
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1100
St. Paul, MN 55101-2128
Phone: (651) 757-1459
jacob.campion@ag.state.mn.us

*Attorneys for the State of Minnesota*

AARON D. FORD
*Attorney General of the State of Nevada*

Heidi Parry Stern, *Solicitor General*
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
Phone: (775) 684-1100
HStern@ag.nv.gov

*Attorneys for the State of Nevada*

GURBIR S. GREWAL
*Attorney General of the State of New Jersey*

Glenn J. Moramarco
  *Assistant Attorney General*
Katherine A. Gregory
  *Deputy Attorney General*
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor, West Wing
Trenton, NJ 08625-0080
Phone: (609) 292-4925
Glenn.Moramarco@law.njoag.gov

*Attorneys for the State of New Jersey*

HECTOR BALDERAS
*Attorney General of New Mexico*

Tania Maestas
  *Chief Deputy Attorney General*
Nicholas M. Sydow, *Civil Appellate Chief*
Jennie Lusk
  *Bureau Chief, Civil Rights Bureau*
408 Galisteo Street
Santa Fe, NM 87501
Phone: (505) 490-4060
tmaestas@nmag.gov

*Attorneys for the State of New Mexico*

ELLEN F. ROSENBLUM
*Attorney General of the State of Oregon*

Nicole deFever
Scott Kaplan
  *Senior Assistant Attorney General*
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
Phone: (971) 673-1800
Nicole.defever@doj.state.or.us

*Attorneys for the State of Oregon*

PETER F. NERONHA
*Attorney General of the State of Rhode Island*

Justin Sullivan
  *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400
jjsullivan@riag.ri.gov

*Attorneys for the State of Rhode Island*

THOMAS J. DONOVAN, JR.
*Attorney General of the State of Vermont*

Benjamin D. Battles*, Solicitor General*
Julio A. Thompson
  *Assistant Attorney General, Civil Rights Unit*
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609-1001
Phone: (802) 828-5500
Benjamin.Battles@vermont.gov

*Attorneys for the State of Vermont*

MARK R. HERRING
*Attorney General of the Commonwealth of Virginia*

Michelle S. Kallen, *Deputy Solicitor General*
Toby J. Heytens, *Solicitor General*
Martine E. Cicconi, *Deputy Solicitor General*
Brittany M. Jones, *John Marshall Fellow*
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
Phone: (804) 786-7240
SolicitorGeneral@oag.state.va.us

*Attorneys for the Commonwealth of Virginia*

ROBERT W. FERGUSON
*Attorney General of the State of Washington*

Laura K. Clinton, *Assistant Attorney General*
Andrew R. W. Hughes
  *Assistant Attorney General*
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Phone: (206) 233-3383
LauraC5@atg.wa.gov

*Attorneys for the State of Washington*

MATTHEW JERZYK
*City Solicitor for the City of Central Falls*
City of Central Falls
580 Broad Street
Central Falls, RI 02863
Phone: (401) 727-7422
MJerzyk@CentralFallsRI.us

*Attorney for the City of Central Falls*

MARK A. FLESSNER
*Corporation Counsel of the City of Chicago*

Stephen Kane, *Deputy Corporation Counsel*
Rebecca Hirsch, *Assistant Corporation Counsel*
City of Chicago Law Department
Affirmative Litigation Division
121 N. LaSalle Street, Room 600
Chicago, IL 60602
Phone: (312) 744-6934
Stephen.kane@cityofchicago.org

*Attorneys for the City of Chicago*

ZACHARY W. CARTER
*Corporation Counsel of the City of New York*

Tonya Jenerette
   *Deputy Chief for Strategic Litigation*
100 Church Street
New York, NY 10007
Phone: (212) 356-4055
tjeneret@law.nyc.gov

*Attorneys for the City of New York*

MARCEL S. PRATT
*City Solicitor of the City of Philadelphia*

Benjamin H. Field
   *Divisional Deputy City Solicitor*
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
Phone: (215) 683-5003
marcel.pratt@phila.gov

*Attorneys for the City of Philadelphia*

JEFFREY DANA
*City Solicitor of the City of Providence*
City of Providence
444 Westminster Street
Providence, RI 02903
Phone: (401) 680-5333
Jdana@providenceri.gov

*Attorney for the City of Providence*

PETER S. HOLMES
*Seattle City Attorney*

Gary T. Smith, *Assistant City Attorney*
Erica R. Franklin, *Assistant City Attorney*
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
Phone: (206) 684-8200
Gary.Smith@seattle.gov

*Attorneys for the City of Seattle*

ROLANDO L. RIOS
*Special Counsel for Cameron and Hidalgo Counties*
110 Broadway, Suite 355
San Antonio, TX 78205
Phone: (210) 222-2102
rrios@rolandorioslaw.com

*Attorney for Cameron County, Texas and Hidalgo County, Texas*

CHARLES J. McKEE
*Monterey County Counsel*

William M. Litt, *Deputy County Counsel*
Office of the County Counsel
County of Monterey
168 West Alisal Street, 3rd Floor
Salinas, CA 93901
Phone: (831) 755-5045
McKeeCJ@co.monterey.ca.us

*Attorneys for Monterey County*

UNITED STATES CONFERENCE OF
MAYORS

John Daniel Reaves, *General Counsel*
U.S. Conference of Mayors
1750 K Street NW, 11th Floor
Washington, DC 20006
Phone: (202) 887-1100
jdreavesoffice@gmail.com

*Attorney for the U.S. Conference of Mayors*

*\*Application for admission pro hac vice forthcoming*