FILED
2019 Aug-20 PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, and MORRIS J. BROOKS, JR., Representative for Alabama's 5th Congressional District,<br><br>   *Plaintiff*s,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE; and WILBUR L. ROSS, in his official capacity as Secretary of Commerce; BUREAU OF THE CENSUS, an agency within the United States Department of Commerce; and STEVEN DILLINGHAM, in his official capacity as Director of the U.S. Census Bureau,<br><br>   *Defendants*,<br>and<br><br>DIANA MARTINEZ; RAISA SEQUEIRA; SAULO CORONA; IRVING MEDINA; JOEY CARDENAS; FLORINDA P. CHAVEZ; and CHICANOS POR LA CAUSA;<br><br>COUNTY OF SANTA CLARA, CALIFORNIA; KING COUNTY, WASHINGTON; and CITY OF SAN JOSÉ, CALIFORNIA,<br><br>   *Defendant-Intervenors.* | Civil Action No. 2:18-cv-00772-RDP |

**<u>OPPONENTS' RESPONSIVE SUBMISSION IN RESPONSE TO
EXHIBIT B OF THE COURT'S ORDER
SUBMITTED IN RESPONSE TO APPLICANTS'
MOTIONS TO INTERVENE (DOCS. 96 & 98)</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 5

I.     Movants Are Not Entitled To Intervention As Of Right. ..................................... 5

     A.     Movants' Proposed Interventions Are Untimely. ....................................... 5

     B.     Movants' Interests Are Adequately Represented. ...................................... 7

II.    Movants Should Not Be Granted Permissive Intervention. ................................ 8

III.   Plaintiffs' Narrowing Of Their Suit Further Militates Against Intervention. ..... 10

CONCLUSION .............................................................................................................. 11

CERTIFICATE OF COUNSEL .................................................................................... 12

CERTIFICATE OF SERVICE ...................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*,
   278 F.R.D. 664 (S.D. Fla. 2011) ................................................................................ 9

*Associated Industries of Alabama, Inc. v. Train*,
   543 F.2d 1159 (5th Cir. 1976) ...................................................................................... 8

*Clark v. Putnam County*,
   168 F.3d 458 (11th Cir. 1999) ...................................................................................... 7

*Georgia v. U.S. Army Corps of Engineers*,
   302 F.3d 1242 (11th Cir. 2002) ................................................................................ 5, 6

*People of State of Cal. v. Tahoe Reg'l Planning Agency*,
   792 F.2d 775 (9th Cir. 1986) ........................................................................................ 9

*Sierra Club, Inc. v. Leavitt*,
   488 F.3d 904 (11th Cir. 2007) ................................................................................. 7, 8

*Stone v. First Union Corp.*,
   371 F.3d 1305 (11th Cir. 2004) ............................................................................ 5, 6, 7

*United States v. Jefferson Cty.*,
   720 F.2d 1511 (11th Cir. 1983) ................................................................................ 6, 9

*Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*,
   929 F.2d 591 (11th Cir. 1991) ...................................................................................... 9

**Statutes**

13 U.S.C. § 141(b) ........................................................................................................... 10

**Other Authorities**

Justin Wise, *Alabama Sues Census Bureau for Counting Undocumented Immigrants*, The Hill, May 22, 2018, available at https://bit.ly/2KIc47S (last visited Aug. 19, 2019) ...................................................................................................... 3

Kim Chandler, *Alabama Sues Over Inclusion of Migrants in US Census*, Associated Press, May 22, 2018, available at https://bit.ly/2MrplDy (last visited Aug. 19, 2019) ...................................................................................................... 3

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................5, 8

Fed. R. Civ. P. 24(b) ................................................................................................8, 9

Fed. R. Civ. P. 24(b)(3)................................................................................................9

**Regulations**

Final 2020 Census Residence Criteria and Residence Situations,
  83 Fed. Reg. 5525 .................................................................................................2, 10

**INTRODUCTION**

Plaintiffs the State of Alabama and Representative Mo Brooks brought this suit in May 2018 arguing that the Constitution requires that each state's share of Congressional seats and Electoral College votes should be apportioned based solely on the number of persons in each state that have lawful and permanent connections to the state. Plaintiffs sued four Defendants—the Secretary of Commerce, Department of Commerce, Census Bureau, and Census Bureau's Director—contending that their plan to include illegal aliens in the 2020 Census apportionment count was contrary to the Constitution's design because illegal aliens, as a matter of law, lack a legal and permanent connection to the state where they reside. Plaintiffs also challenged Defendants' decision to include illegal aliens in the 2020 Census resident count. Two months later, two groups of proposed intervenors moved to join the case as defendants. They included three local governments, six voters from states likely to lose a congressional seat if illegal aliens are not included in the apportionment count, and a nonprofit. The proposed intervenors argued that they had representational and financial interests in ensuring that illegal aliens are included in the census counts for apportionment and resident population. The Court granted their motions.

Now, more than a year after the first two sets of intervenors moved to join this case, two more sets of proposed intervenors are seeking intervention. They include states, cities, counties, and the U.S. Conference of Mayors, and they assert the exact same interests that the Defendant-Intervenors asserted a year ago. But while the Court granted Defendant-Intervenors' motions, this Court should deny these most recent motions.

First, the movants are not entitled to intervention as of right because their motions are untimely. They have known of this suit and their asserted interests for more than a year, and their intervention at this stage threatens to slow down proceedings to Plaintiffs' detriment. Second, the

motions should be denied precisely because the Court has already allowed Defendant-Intervenors into the case. The Defendant-Intervenors seek the same goals the movants seek and have the same relevant interests. Movants' interests are thus adequately represented by existing parties and counsel and there is no need for nearly thirty more intervenors.

For similar reasons, the Court should not grant movants permissive intervention. Their motions are late; they will suffer no prejudice from having to participate as amici, for Defendants and Defendant-Intervenors can press movants' relevant interests; and that complete overlap in interests suggests that granting intervention will not add anything to this litigation except for possible delay. Accordingly, the motions should be denied.

## BACKGROUND

On February 8, 2018, the Census Bureau issued the 2020 Residence Rule, which will govern how the Census Bureau and Department of Commerce conduct the census, tally the population, and allocate individuals to each state. *See* Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525 ("Residence Rule"). The Residence Rule provides that aliens who are unlawfully present in the United States will be counted in the 2020 census and included in states' total resident population and apportionment population just like U.S. citizens and lawfully present aliens. As a result, states with large illegal alien populations stand to gain greater representation in the U.S. Congress and Electoral College, and those states likewise stand to obtain a greater proportion of federal funds that are tied to a state's proportion of the national resident population.

On May 21, 2018, Plaintiffs the State of Alabama and Morris Brooks—a member of the U.S. House of Representatives and a registered voter in the State of Alabama—initiated this suit against the Department of Commerce, the Secretary of Commerce, the Census Bureau, and the

Acting Director of the Census Bureau. (*See generally* Doc. 1). Plaintiffs contend that Defendants' decision to include illegal aliens in the final census count is unconstitutional, (*see, e.g.*, Doc. 1, ¶¶ 87-123, 140-48), and unlawful under the Administrative Procedures Act, (*see, e.g.*, Doc. 1, ¶¶ 124-139, 149-57), and that Defendants therefore must exclude illegal aliens from the final census allocations for each state. The lawsuit received widespread news coverage shortly after it was filed.[1]

Less than two months after Plaintiffs filed this suit, two sets of applicants moved to intervene in the case as defendants. (*See* Docs. 6, 9). The Martinez Intervenors include Chicanos Por La Causa, an organization that "works to increase Latino political empowerment in Arizona," (Doc. 6-2 at 6), as well as six voters from California, Florida, Arizona, and Texas—states the Martinez Intervenors indicate have large populations of undocumented immigrants. (*Id.* at 4). The Martinez Intervenors contended that their intervention was required because Defendants might not adequately represent the Martinez Intervenors' "direct interest in maintaining the use of total population for congressional apportionment and electoral college votes." (*Id.* at 18).

The Local Government Intervenors—comprising Santa Clara County, California; King County, Washington; and the City of San José, California—sought intervention on similar grounds. (*See* Doc. 9). They explained that each local government contained large populations of undocumented persons. (*Id.* at 5-7). They asserted an interest in ensuring that undocumented persons are included in the resident population count used to apportion federal funds. (*Id.* at 8-

---

[1] *See, e.g.*, Kim Chandler, *Alabama Sues Over Inclusion of Migrants in US Census*, Associated Press, May 22, 2018, available at https://bit.ly/2MrplDy (last visited Aug. 19, 2019); Justin Wise, *Alabama Sues Census Bureau for Counting Undocumented Immigrants*, The Hill, May 22, 2018, available at https://bit.ly/2KIc47S (last visited Aug. 19, 2019).

12). And they asserted an interest in including undocumented persons in the apportionment base so Local Government Intervenors would receive adequate political representation and so they could draw accurate internal boundaries when redistricting within the counties. (*Id.* at 12-13, n.4). They contended that Defendants would likely not adequately represent their interests. (*Id.* at 15-17).

On December 13, 2018, this Court granted both motions to intervene. (Doc. 53). The Court noted the representational, redistricting, and financial harms asserted by the Movants, and held that "the respective interests of the Proposed Defendant-Intervenors may go unrepresented if they are not permitted to intervene." (*Id.* at 6).

The Plaintiffs, Defendants, and both sets of Defendant-Intervenors then submitted briefs regarding Plaintiffs' standing. (*See* Docs. 59, 60, 65, 70, 77, 78). On May 5, 2019, the parties presented argument on Defendants' motion to dismiss. On June 6, the Court denied that motion. (Doc. 84). On July 19, Defendants and Defendant-Intervenors filed their respective answers. (Docs. 90-92). And on July 23, the Court ordered the parties to submit a joint report stating their respective positions on how the case should proceed. (Doc. 93). The deadline to file that report is September 3, with a status conference to follow on September 6. (Doc. 95).

On August 12, 2019, a group of 25 states, cities, and counties, as well as the U.S. Conference of Mayors (the "State and Local Government Movants") sought to intervene as defendants in this case. (Docs. 96, 97). That same day, another set of local governments—the City of Atlanta, Georgia, and Arlington County, Virginia—filed a separate motion to intervene as defendants. (Doc. 98). Plaintiffs oppose these motions for the reasons given in this brief.

# ARGUMENT

## I. Movants Are Not Entitled To Intervention As Of Right.

Neither set of movants is entitled to intervention as of right because their applications are untimely and their interests are adequately represented by the nonprofit, individuals, local governments, and federal defendants who are already parties to this litigation.

Federal Rule of Civil Procedure 24(a) provides in relevant part that "[o]n a timely motion," the court must allow intervention for a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Eleventh Circuit has interpreted Rule 24(a) to require a movant to make four showings: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004). Neither set of movants has met the first or fourth requirements.

### A. Movants' Proposed Interventions Are Untimely.

First, these new motions to intervene—which come more than a year after this litigation was filed and more than a year after similarly situated movants sought intervention—are untimely. In assessing timeliness, courts consider four factors:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the

> motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002). Here, the first factor cuts strongly against intervention, as movants' professed interests in this case have been known for more than a year. Indeed, Atlanta and Arlington County even admit in their motion that they were aware of this suit and were considering intervention when the Local Government Intervenors were seeking intervention a year ago. (*See* Doc. 98 at 3 n.1 (citing Doc. 17 at 2 n.2)). The State and Local Government Movants suggest that their motion is timely due to recent statements by the U.S. Attorney General. (Doc. 97 at 8). But two other sets of intervenors with similar interests moved to intervene more than a year ago based in part on the fact that the "Department of Justice leadership recently refused to reject Alabama's theory." (Doc. 9 at 16). The State and Local Government Movants thus likewise had good reason to know of their interests at that time but chose not to intervene

Next, adding twenty-eight new defendant-intervenors more than a year into the litigation risks prejudicing Plaintiffs by delaying a timely resolution of Plaintiffs' claims. Conversely, and as explained further below (at Part I.B), a denial of intervention is unlikely to prejudice movants. As the Eleventh Circuit has explained, "the thrust of the inquiry must be the extent to which a final judgment in the case may bind the movant *even though he is not adequately represented by an existing party*." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1517 (11th Cir. 1983) (emphasis added). Thus, where a movant's "interest is identical with a party[,] … he is adequately represented," and there is "no prejudice sufficient to give weight to the third factor." *Id.* Here, there are two sets of Defendant-Intervenors with interests and incentives that are identical to those of the two new sets of proposed intervenors. "There is no indication whatsoever that the

representation rendered by [Defendant-Intervenors] would be inadequate." *Stone v. First Union Corp.*, 371 F.3d 1305, 1312 (11th Cir. 2004).

Finally, there are no unusual circumstances that favor intervention of two additional sets of government entities. Thus, the motions are untimely and should be denied.

### B. Movants' Interests Are Adequately Represented.

Movants' request for intervention should also be denied because their interests are adequately represented by various individuals and entities already party to this suit. Between the Defendants and Defendant-Intervenors, there are numerous parties seeking the same objective that movants seek—the dismissal of this suit, either on standing or on the merits. There is no need to add more than two dozen more parties to this litigation.

Courts "presume adequate representation when an existing party seeks the same objectives as the would-be interveners." *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904 (11th Cir. 2007). Though "this presumption is 'weak,' it nonetheless imposes upon the applicant for intervention "the burden of coming forward with some evidence to the contrary." *Id.* (quoting *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir. 1999)). The movants have not met this burden.

The State and Local Government Movants assert "specific interests related to their own rights to fair political representation and the distribution of federal funds that no other party shares." (Doc. 97 at 16). But other parties *do* share these interests. The Defendant-Intervenors include voters and local governments that share the same interests as movants in ensuring that the apportionment and resident population counts include every person who resides in a given state when the census is taken, regardless of whether those people are present in the state legally. Because the Defendant-Intervenors have "identical interests to the" movants, they "provide[] adequate representation." *Stone*, 371 F.3d at 1312. In other words, because "nothing in the record

before us 'cast[s] doubt upon the will of the'" Defendant-Intervenors to defend the practice of including all residents in the apportionment and resident counts for each state, intervention as of right should be denied. *Sierra Club*, 488 F.3d 904, 911 (11th Cir. 2007) (quoting *Associated Industries of Alabama, Inc. v. Train,* 543 F.2d 1159, 1161 (5th Cir. 1976)).

The State and Local Government Movants assert that because the Local Government Intervenors represent only "the interests of their own residents," they "cannot be presumed to represent the interests of residents in the 26 other states, cities, and counties represented by the Proposed Defendant-Intervenors." (Doc. 97 at 17). But if the "existing party seeks the same objectives as the would-be interveners"—as is the case here—courts do indeed "presume adequate representation." *Sierra Club*, 488 F.3d at 910. For "[w]hile a proposed intervener and a party might, as a general matter, have different interests, the relevant Rule 24(a)(2) inquiry is whether the party will represent the proposed intervener's interest *with respect to the subject matter of the action.*" *Id*. at 910 n.9. Thus, the Eleventh Circuit held that the Florida Department of Environmental Protection was not entitled to intervene alongside the EPA to defend EPA regulations that governed Florida, despite Florida possessing different sovereign interests from the federal government. *Id*. Because the Defendant-Intervenors and movants "have the same interest in" defeating Plaintiffs' suit, movants' interests are adequately represented and movants are not entitled to intervene.

## II. Movants Should Not Be Granted Permissive Intervention.

For similar reasons, the Court should not grant permissive intervention to any movant. Federal Rule of Civil Procedure 24(b)(1)(B) provides, in relevant part, that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." When "exercising its discretion, the court must

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). If the movant has no right to intervene, "it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991). Because allowing nearly thirty new intervenors into this suit more than a year after it was filed would likely slow proceedings while adding little to the case, permissive intervention should be denied. *See People of State of Cal. v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986) (affirming denial of permissive intervention where "intervention would be redundant and would impair the efficiency of the litigation").

First, as explained above (at Part I.A), movants' proposed intervention is untimely. *See United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983) (The "four factors in assessing timeliness" apply "whether intervention of right or permissive intervention under Fed. R. Civ. P. 24 is claimed."). Movants had reason to know of their asserted interests more than a year ago; those Defendant-Intervenors who intervened last year adequately represent their interests, meaning there will be no prejudice to movants if they have to instead participate as amici; and the "proposed intervention necessarily involves some degree of delay," which could prejudice Plaintiffs. *Worlds*, 929 F.2d at 595.

Second, because "the interests and objectives of the" movants and Defendant-Intervenors "are closely aligned," it is unlikely that movants "will add materially to the instant litigation," particularly where they can still be heard as amici. *Am. Fed'n of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 671 (S.D. Fla. 2011). Plaintiffs have brought a narrow legal challenge to Defendants' proposed action, and where there is already one set of

9

Defendants and two sets of Defendant-Intervenors opposing Plaintiffs, there is no need for two more groups of defendant-intervenors to decide this case. The motions should be denied.

### III. Plaintiffs' Narrowing Of Their Suit Further Militates Against Intervention.

Finally, while not necessary for resolving these motions, Plaintiffs inform the Court of their decision to streamline this litigation by focusing solely on the representational, and not financial, harms that are substantially likely to flow from Defendants' actions. Plaintiffs' complaint challenges Defendants' decision to include illegal aliens in both the resident population counts used for federal funding and the apportionment population counts used for apportioning congressional seats and Electoral College votes. (*See, e.g.*, Doc. 1 ¶¶ 50-59 (addressing effects on apportionment of including illegal aliens in apportionment base); *id.* ¶¶ 73-81 (addressing effects on federal funding of including illegal aliens in enumeration of resident population)).[2] But in the interest of streamlining this litigation, Plaintiffs stipulate that they will seek relief related only to their representational injuries for the remainder of this case. Plaintiffs' suit thus no longer challenges Defendants' proposal in the Residence Rule to include illegal aliens in the resident population counts that determine how Census-based funds are distributed to states and local governments. But Plaintiffs continue to challenge Defendants' decision to include illegal aliens in the apportionment population counts reported to the President pursuant to 13 U.S.C. § 141(b). There is a substantial risk that Defendants' actions will cause representational harms to Plaintiffs, and Plaintiffs will continue to seek relief that will likely redress those harms.

---

[2] *Cf.* 83 Fed. Reg. at 5530 (noting how the Census Bureau will include military members who are temporarily deployed overseas on April 1, 2020, in their home state's apportionment count *and* resident count, while military and civilian employees of the federal government stationed overseas will be counted only in the apportionment count).

In light of Plaintiffs' stipulation, at least one interest claimed by movants—their potential loss of federal funding—is addressed. To be sure, movants also claim representational interests in this suit. But, as explained above, those interests (as well as movants' financial interests) are adequately represented by the numerous parties who have been part of this case for the past year.

## CONCLUSION

For the foregoing reasons, the Court should deny both motions to intervene.

Respectfully submitted,

STEVE MARSHALL
*Alabama Attorney General*

BY:

| | |
|---|---|
| Morris J. Brooks, Jr.<br>Pro se<br>2101 W. Clinton Avenue<br>Suite 302<br>Huntsville, AL 35805<br>(256) 355-9400<br>(256) 355-9406—Fax<br><br>*Counsel for Plaintiff*<br>*Morris J. Brooks, Jr.* | s/ Edmund G. LaCour Jr.<br>*Solicitor General* (ASB-9182-U81L)<br><br>James W. Davis (ASB-4063-I58J)<br>*Deputy Attorney General*<br><br>Winfield J. Sinclair (ASB-1750-S81W)<br>Brad A. Chynoweth (ASB-0030-S63K)<br>*Assistant Attorneys General*<br><br>OFFICE OF THE ATTORNEY GENERAL<br>501 Washington Avenue<br>Post Office Box 300152<br>Montgomery, AL 36130-0152<br>Tel: (334) 242-7300<br>Fax: (334) 353-8440<br>Email: elacour@ago.state.al.us<br>    jimdavis@ago.state.al.us<br>    wsinclair@ago.state.al.us<br>    bchynoweth@ago.state.al.us<br><br>*Counsel for Plaintiff*<br>*State of Alabama* |

## CERTIFICATE OF COUNSEL

I certify, as an officer of the Court, that I have affirmatively and diligently sought to submit to the Court only those documents, factual allegations, and arguments that are material to the issues to be resolved in the motion, that careful consideration has been given to the contents of Plaintiffs' submission to ensure that it does not include vague language or an overly broad citation of evidence or misstatements of the law, and that the submission is non-frivolous in nature.

                                              s/Edmund G. LaCour Jr.
                                              Edmund G. LaCour Jr.
                                              Solicitor General

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of August, 2019, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to all counsel of record electronically registered with the Clerk.

                                              s/Edmund G. LaCour Jr.
                                              Edmund G. LaCour Jr.
                                              Solicitor General