FILED
2019 Sep-09 PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:18-CV-772-RDP |
| } | |
| UNITED STATES DEPARTMENT OF } | |
| COMMERCE, et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on two Opposed Motions to Intervene. (Docs. # 96, 98).

The first motion was filed by the States of New York, California, Colorado, Connecticut, Illinois, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Virginia, and Washington; the District of Columbia; the cities and counties of Cameron County, Texas; Central Falls, Rhode Island; Chicago, Illinois; Hidalgo County, Texas; Monterey County, California; New York, New York; Philadelphia, Pennsylvania; Providence, Rhode Island; and Seattle, Washington; and the United States Conference of Mayors (collectively, "the State and Local Government Movants"). (Doc. # 96).

The second motion was filed by Arlington County, Virginia and the City of Atlanta, Georgia. (Doc. # 98). For clarity and convenience, both groups of Proposed Defendant-Intervenors will be referred to collectively as "the Proposed State and Other Defendant-Intervenors," or "Movants." The Proposed State and Other Defendant-Intervenors have filed their Motions pursuant to Federal Rule of Civil Procedure 24(a) and (b). (Docs. # 96, 98). They are opposed, fully briefed (Docs. # 96-98, 103, 106-07), and ripe for review. For the reasons explained below

1

and in the court's December 13, 2018 Memorandum Opinion (*see* Doc. # 53), both Motions are due to be granted under Federal Rule of Civil Procedure 24(b)(1)(B), as the court concludes the Proposed State and Other Defendant-Intervenors are entitled to permissive intervention.

I.      **Procedural Background**

Plaintiffs--the State of Alabama and Representative Morris J. "Mo" Brooks, Jr.--filed suit on May 21, 2018, challenging the final rule regarding the 2020 Census Residence Criteria and Residence Situations ("Residence Rule"), which was finalized in February 2018. (Doc. # 1 at ¶ 1). Plaintiffs raise three constitutional and two statutory challenges to the Residence Rule, contending that the inclusion of undocumented persons in the 2020 Census will negatively affect Alabama's access to federal funding as well as the State's political representation in the House of Representatives and the Electoral College. (*See generally* Doc. # 1). Plaintiffs request (1) that the Residence Rule be declared unlawful, and (2) that the congressional apportionment following the 2020 Census exclude undocumented persons from population figures. (*Id*. at ¶ 158).

Before the Proposed State and Other Defendant-Intervenors filed the currently pending motions, the Martinez Defendant-Intervenors and the Local Government Defendant-Intervenors filed similar motions to intervene (Docs. # 6, 9). The court held that both motions were timely and satisfied the requirements for permissive intervention, as set forth in Rule 24(b), and the court granted the motions. (Doc. # 53 at 3-4).

Here, Plaintiffs oppose both motions to intervene (Docs. # 96, 98), arguing (1) that the motions are untimely, and (2) that allowing the Proposed Defendant-Intervenors to intervene would be redundant because their interests are already adequately represented.[1] (Doc. # 103 at 5-

---

[1] In their Response, Plaintiffs inform the court that they are narrowing their suit to focus solely on representational issues, as opposed to financial harms, in an effort to "streamline" the litigation. (Doc. # 103 at 14). They acknowledge, however, that the court need not address this narrowing of the issues for purposes of resolving the current motion before the court.

6). The court addresses each argument, in turn.

### A. Proposed State and Other Defendant-Intervenors' Motion to Intervene is Timely

With regard to Plaintiff's first argument--that the motion to intervene is untimely--the court has already ruled that the intervention motions filed by the Martinez Movants and the Local Government Movants were timely. (Doc. # 53). Admittedly, the instant motions were filed later than those filed by the Martinez and Local Government Defendant-Intervenors, who filed approximately two months after the case was initially filed. The Proposed State and Other Defendant-Intervenors filed their motions fifteen months after the case was initially filed. Therefore, further analysis is warranted. After careful review, however, the court concludes the motions are timely.

First, the decision to allow a party to permissively intervene is "wholly discretionary with the court." *Worlds v. Dep't of Health and Rehabilitative Servs.*, 929 F.2d 591, 595 (11th Cir. 1991). Second, "the court [has] yet to take significant action,"[2] and thus granting the Proposed State and Other Defendant-Intervenors' motion would not prejudice Plaintiffs. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (reversing the district court's denial of the defendant-intervenor, noting that "intervention did not delay the proceedings and the court had yet to take significant action"). In fact, there is little indication that Plaintiffs would be prejudiced if the Proposed State and Other Defendant-Intervenors were allowed to intervene. On the other hand, Movants assert that the prejudice that would befall them if they were denied intervention is substantial.

---

[2] (Doc. # 53 at 4). As the Proposed State and Other Defendant-Intervenors correctly note, "the motion to dismiss was only recently denied, no scheduling order or case management order has been issued, and no discovery has been conducted." (Doc. # 107 at 3).

In particular, Movants contend that this litigation puts at risk their "possible loss of seats in Congress, impairment of their ability to conduct intrastate redistricting in compliance with their own state constitutions and laws, and the risk to hundreds of billions of dollars in public funds." (Doc. # 107 at 3). The court finds that the Movants would be prejudiced if not allowed to intervene, and that, because the court has yet to take significant action, the motions to intervene are timely.

B.  **Proposed State and Other Defendant-Intervenors' Interests are Not Currently Adequately Represented**

Plaintiffs also argue that granting the Proposed State and Other Defendant-Intervenors' motions would be essentially redundant because their interests are adequately represented. They also contend that granting the motion to intervene would not add value to the litigation and would cause delay. (Doc. # 103 at 13-14). The court disagrees, at least for now.

Here, the Proposed State and Other Defendant-Intervenors argue that the Martinez and Local Government Defendant-Intervenors do not adequately represent their full interests particularly because they do not "stand[] to lose the seats in Congress that Alabama seeks to gain." (Doc. # 107 at 5). Indeed, Movants claim that the State of California will lose congressional representation if Plaintiffs prevail.[3] (*Id.*). Thus, while the *objective* of each Defendant-Intervenor may be the same (and may even be adequately represented), the *interests* are not the same, and there is a substantial risk that the Proposed State and Other Defendant-Intervenors' *interests* would not be protected if they were denied intervention. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) ("The fact that the interests are similar does not mean that approaches to litigation will be the same.") (citation omitted).

The motion before the court is analogous to the situation in *Utah v. Evans*, 536 U.S. 457

---

[3] The Proposed State and Other Defendant-Intervenors also claim that the states of New York and New Jersey are likely at risk for losing congressional seats as well should Plaintiff prevail. (Doc. # 107 at 5).

(2002). In *Evans*, the question before the Supreme Court was "whether the Census Bureau's use in the year 2000 census of a methodology called 'hot-deck imputation' either (1) violates a statutory . . . [prohibition on the use of] 'sampling,' or (2) is inconsistent with the Constitution's statement that an 'actual Enumeration' be made." 536 U.S. at 457. In that suit, the State of Utah sought an injunction compelling the census officials to change the official census results due to the alleged improper computation. *Id.* at 459. The State of North Carolina was permitted to intervene in order to oppose the claims of Utah. *Id.*

North Carolina argued, among other things, that the Court lacked jurisdiction to hear the case because the Court could not "redress" the alleged injury that Utah suffered (i.e., Utah lacked standing), and that Utah "suffer[ed] from the lack of the additional congressional Representative to which North Carolina believe[d] itself entitled as a consequence of the filing of [the census report]." *Id.* at 461. Specifically, North Carolina argued that the statutes governing the census process "[made] ultimate redress [by the court] legally impossible" because the statute did not allow for revision. *Id.* at 461. Under the governing statute, 13 U.S.C. § 141:

> the Secretary of Commerce must "take a decennial census of population as of the first day of April" 2000, 13 U.S.C. § 141(a); he must report the results to the President by January 1, 2001, § 141(b); the President must transmit to Congress by January 12, 2001, a statement showing the "whole number of persons in each State ... and the number of Representatives to which each State would be entitled," 2 U.S.C. § 2a(a); and, within 15 days of receiving that statement, the Clerk of the House of Representatives must "send to the executive of each State a certificate of the number of Representatives to which such State is entitled" § 2(a)(b).

*Id.* at 461.

North Carolina did not ultimately prevail on its standing arguments. But the salient point here is that it was permitted to intervene and assert its arguments challenging Utah's claims against the Secretary of Commerce and the Acting Director of the Census Bureau. *Id.* at 459. Similarly, the states seeking intervention are entitled to intervene and challenge Alabama's claims against

5

the Department of Commerce, Secretary Ross, and Director Dillingham.

**II.    Conclusion**

For these reasons, the Proposed State and Other Defendant-Intervenors Motions to Intervene (Docs. # 96 and 98) are due to be granted.[4] An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 9, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[4] As noted above, Plaintiffs have indicated in a recent filing that they intend to voluntarily dismiss their claims related to federal funding. They confirmed this at the status hearing on September 6, 2019. If that occurs, it may be appropriate to revisit certain of the Intervenors' status and the court's findings in this Order, as well as its previous order allowing intervention. (Doc. # 53). This is particularly the case with respect to municipal intervenors in states that have been permitted to intervene.