FILED

2020 Aug-03  PM 06:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| STATE OF ALABAMA, *et al.*,<br><br>　　*Plaintiffs*,<br><br>　　　　v.<br><br>THE UNITED STATES DEPARTMENT<br>OF COMMERCE, *et al.*,<br><br>　　*Defendants*,<br><br>and<br><br>DIANA MARTINEZ, *et al.*; COUNTY OF<br>SANTA CLARA, CALIFORNIA, *et al.*; and<br>STATE OF NEW YORK, *et al.*,<br><br>　　*Intervenor-Defendants*. | Case No. 2:18-cv-00772-RDP |

**DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S
JULY 21, 2020 ORDER AND REQUEST FOR SCHEDULING ORDER**

Defendants, the United States Department of Commerce, Wilbur Ross, in his official capacity as Secretary of Commerce, the United States Census Bureau, and Steven Dillingham, in his official capacity as Director of the Census Bureau (Defendants), respectfully submit this brief pursuant to the Court's July 21, 2020 Order, which directed the parties to address what effect the July 21, 2020 Presidential Memorandum, *Ecluding Illegal Aliens from the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679 (July 21, 2020), has on the parties' claims in this case. *See* Order, ECF No. 153. As we explain below, because that Memorandum alters the posture of those claims, Defendants respectfully request that the Court stay all ongoing discovery and enter a scheduling order directing parties to file summary judgment briefs addressing both threshold jurisdictional arguments and the merits of their claims.

## ARGUMENT

This case involves a disagreement about the meaning of the Constitution's Apportionment Clause. Plaintiffs, the State of Alabama and Representative Mo Brooks, allege that the Clause requires excluding all illegal aliens from the apportionment base for seats in the U.S. House of Representatives. *See generally* Am. Compl. ¶¶ 1–5, ECF No. 112. Some of the Intervenor-Defendants have filed a cross-claim asserting the reverse—*i.e.*, that the Clause requires including all such aliens. *See* Martinez Invervenors Ans. and Cross-Claim at 29–31, ¶¶ 1–9, ECF No. 119 (Cross-Claim). Because legal disagreements in the abstract are not justiciable, *see*, e.g., *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), Plaintiffs have sought to establish standing by framing their claims as a challenge to the Census Bureau's *Final 2020 Census Residence Criteria and Residence Situations*, 83 Fed. Reg. 5525 (Feb. 8, 2018) (Residence Rule). That Rule, Plaintiffs have argued, compels the inclusion of illegal aliens in the apportionment base—and would be likely to result in Alabama losing a representative. *See, e.g.*, Am Compl. ¶¶ 1, 18, 20–23 (alleging that the apportionment count will be a product of the Residence Rule); *id.* ¶ 50 (alleging that application of the Rule will cause Alabama to lose a seat in the House of Representatives); *see also* Cross-Claim ¶ 52 (alleging that Intervenors will be injured if illegal aliens are excluded from the apportionment base). Whatever the merits of those claims may have been previously, Plaintiffs can no longer establish that they stand to suffer harm.

The Presidential Memorandum makes clear that the Residence Rule does not, as a legal matter, stand in the way of excluding illegal aliens from the apportionment count transmitted to Congress. *See* 85 Fed. Reg. at 44,679–80. To the contrary, the Memorandum states that "it is the policy of the United States to exclude" illegal aliens from the apportionment base "to the extent feasible and to the maximum extent of the President's discretion under the law," and directs the Secretary of Commerce to provide "information tabulated according to the methodology set forth in" the Residence Rule alongside "information permitting the President, to the extent practicable," to carry out the stated

policy.  *Id.* at 44,680.  With this directive, the President has asserted his authority to determine the apportionment base separate and apart from the count governed by the Residence Rule.  Any claim that Plaintiffs or Intervenor-Defendants may have about apportionment therefore depends on what is feasible and on how the President exercises his discretion.

At this point, however, those questions remain open.  The Census Bureau has not yet completed the task of enumerating people for the 2020 census.  Neither the total numbers of people that reside in each state, nor the number of illegal aliens that the Census Bureau may ultimately identify, are known.  Nor is it known how such aliens may be distributed across the various states, or how their exclusion may affect any particular state's number of Representatives.  Indeed, whether a state's representation is ultimately increased, diminished, or unaffected, is completely undetermined, because it depends not only on how many aliens are included in the state's final count, but also on how many such aliens are included in all the other states' population bases.  *See generally Utah v. Evans*, 536 U.S. 452, 461–62 (2002) (addressing how a change in one state's apportionment base may affect another state's number of representatives).  Until Defendants generate and transmit the information required under the Presidential Memorandum, and the President acts on the information, neither Plaintiffs nor Intervenor-Defendants will know whether they have suffered, or stand to suffer, any injury.  *See generally Franklin v. Massachussetts*, 505 U.S. 788, 802 (1992) (to establish standing to challenge an apportionment calculation plaintiffs must establish dimunition of representation).

As a legal matter, this uncertainty renders all of the parties' current claims unripe.  Ripeness, the Eleventh Circuit has explained, requires that there be "sufficient injury to meet Article III's requirement of a case or controversy and, if so, [that] the claim [be] sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court."  *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) (*citing Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984)).  A "claim is not ripe for adjudication"—and thus not justiciable—"if it rests upon contingent future events that

may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes and citations omitted); *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("When a plaintiff is challenging a governmental act, the issues are ripe for judicial review if a plaintiff . . . show[s] he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." (internal quotes and citations omitted)).  The doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Where, as here, there is no certainty that any party will suffer an injury, a Court may not proceed with a case without first satisfying itself that doing so is proper.  *See, e.g.*, *Sikes*, 730 F.2d at 647–48 (because the "question of ripeness affects [] subject matter jurisdiction," the Court must consider it independently even if the parties fail to address it or ask the Court to render a decision notwithstanding the issue (citing cases)); *see also Cheffer*, 55 F.3d at 1523 ("Neither party raises the issue of ripeness.  However, as we do not have subject matter jurisdiction to address unripe claims . . . we must nevertheless confront the issue" (internal citation omitted)).  This is especially true when parties ask the Court to resolve Constitutional questions.  *See Sikes*, 730 F.2d at 647–48.

That the parties are currently in the process of conducting jurisdictional discovery does not alter this imperative.  For one thing, that discovery aims to determine whether Plaintiffs would suffer injury under their old theory of standing, and whether that injury is redressable.  *See, e.g.*, Order, ECF No. 111 (setting discovery schedule on jurisdictional issues).  But, as explained above, Plaintiffs' theory of standing has now been displaced by the Presidential Memorandum, and is legally insufficient today.  Further, to the extent such discovery previously provided a means for the parties to determine the

Census Bureau's capabilities in the event this Court ordered redress for Alabama, such exploration is no longer necessary because the Presidential Memorandum establishes a time certain when the Census Bureau's capabilities, and how that capability may impact parties, will be known:  namely, when the Defendants deliver the numbers the Presidential Memorandum requires.

Meanwhile, to the extent the discovery could be used to give the parties a vehicle to explore the Census Bureau's ongoing efforts to comply with the Presidential Memorandum, such discovery would be improper.  *See generally Kansas State Network, Inc. v. F.C.C.*, 720 F.2d 185, 191 (D.C. Cir. 1983) ("The predecisional process leading to an agency decision, is worthy of protection where a formal opinion is issued." (internal quotes and citations omitted)).  As a general matter, materials reflecting "the deliberative process leading to an agency decision are privileged from discovery."  *Id.* (citing cases).  Indeed, it is well established that neither courts nor parties should interfere with ongoing administrative deliberations whose effects are, as yet, unknown.  *See, e.g., Nat'l Advert. Co.*, 402 F.3d at 1339 ("[T]he ripeness doctrine not only protects courts from abusing their role within the government and engaging in speculative decision-making, but that it also protects the other branches from judicial meddling.").  Ongoing discovery can thus serve no valid purpose.

The only questions that remain in this case are legal ones.  If the Court concludes that the dispute before it is ripe and justiciable, the ultimate issue it would have to resolve is whether implementation of the Presidential Memorandum, to whatever extent such implementation is determined to be feasible, is lawful.[1]  The current discovery cannot—and will not—shed light on this

---

[1]  To the extent this case proceeds beyond the jurisdictional and justiciability questions, Defendants anticipate that the three-judge court requirement of 28 U.S.C. § 2284 could apply.  *See, e.g., Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015) (recognizing that a "three-judge court is not required where the district court lacks jurisdiction of the complaint or the complaint is not justiciable in the federal court" but that a three-judge court "*shall* be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts . . . .") (emphasis added). Defendants may therefore request that such a court be convened.

issue.  Instead, it will merely burden the parties and the Court, and delay ultimate resolution of this matter.  The interests of judicial economy countermand this course.

In sum, both jurisdictional and prudential principles preclude continuing the case in its current posture.  Accordingly, the appropriate course in this matter is for the Court to stay all ongoing discovery, and enter a scheduling order directing the parties to submit briefing addressing the ripeness and justiciability of the parties' claims.  In the interests of judicial economy, this briefing should also allow the parties to address the merits of their claims, so that the Court can promptly decide those issues if the Court determines that it may properly reach them.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court stay all ongoing discovery and enter a scheduling order directing parties to file summary judgment motions, which may include arguments on both jurisdiction and the merits.

Dated:  August 3, 2020          Respectfully submitted,

          ETHAN P. DAVIS
          Acting Assistant Attorney General

          ALEXANDER K. HAAS
          Director, Federal Programs Branch

          DIANE KELLEHER
          BRAD P. ROSENBERG
          Assistant Branch Directors

          */s/  Alexander V. Sverdlov*
          ALEXANDER V. SVERDLOV (NY Bar 4918793)
          Trial Attorney
          United States Department of Justice
          Civil Division, Federal Programs Branch
          1100 L Street, N.W.
          Washington, DC 20005
          Tel: (202) 305-8550
          alexander.v.sverdlov@usdoj.gov

          *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 3rd day of August, 2020, I electronically transmitted the foregoing

document to the Clerk of Court using the ECF System for filing.


*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV