UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, et al., | |
| Plaintiffs, | |
| v. | Case No.: 2:18-cv-00772-RDP |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants, | |
| DIANA MARTINEZ, et al., | |
| Defendant-Intervenors, | |
| COUNTY OF SANTA CLARA, CALIFORNIA, et al., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF NEW YORK, et al., | |
| Defendant-Intervenors, | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR THE APPOINTMENT OF A THREE-JUDGE COURT**

The State and Other Government Defendant-Intervenors and the Local Government Defendant-Intervenors respectfully oppose Plaintiffs' motion for the appointment of a three-judge court.  Doc. # 171.

1

**I.      Background.**

The Constitution requires an "actual Enumeration" of the population every ten years to count "the whole number of persons in each State," in order to apportion Members of the House of Representatives among the states. U.S. Const. art. I, § 2, cl. 3; *id.* amend. XIV, § 2. Congress has assigned its duty to conduct the decennial enumeration to the Secretary of Commerce and Census Bureau. 13 U.S.C. §§ 4, 141(a). To carry out this mandate to conduct a complete and accurate count, the Census Bureau conducts extensive planning over the course of each decade, and promulgates various criteria that govern the conduct of the census. *See generally* 2020 Census Operational Plan v4.0 (Dec. 2018), at https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan4.pdf.

Among these enumeration procedures is the Final 2020 Census Residence Criteria and Residence Situations, which was finalized in February 2018 and is used to "determine where people are counted during each decennial census." 83 Fed. Reg. 5525, 5526 (Feb. 8, 2018). This procedure (the "Residence Rule") provides that the state and specific location where each person resides are "determined in accordance with the concept of 'usual residence,'" which the Census Bureau defines as "the place where a person lives and sleeps most of the time." *Id.* As relevant here, the Residence Rule requires that citizens of foreign countries living in the United States be counted "at the U.S. residence where they live and sleep most of the time," without regard for their immigration status. *Id.* at 5533 (Section C.3); *see also id.* at 5530.

The State of Alabama and U.S. Representative Morris J. Brooks, Jr. filed this lawsuit in May 2018 seeking to vacate and set aside the Residence Rule on the grounds that including undocumented immigrants in the total population count resulting from the decennial census violates the Administrative Procedure Act and the U.S. Constitution. *See* Complaint, Doc. # 1, at

¶¶ 140-157.  Plaintiffs filed an amended complaint in September 2019 alleging that the Residence Rule injures them solely by causing representational harm.

On September 23, 2020, nearly two-and-a-half years after commencing this lawsuit, Alabama filed a motion for the appointment of a three-judge court, arguing for the first time that this lawsuit is "challenging the constitutionality of the apportionment of congressional districts." Doc. # 171-1 at 4.

## II.   Section 2284(a) does not apply because Plaintiffs' complaint does not challenge the constitutionality of the apportionment of congressional districts.

Section 2284 provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts."  28 U.S.C. § 2284(a).  Because Plaintiffs' action is not a challenge to the constitutionality of the apportionment of congressional districts, Section 2284(a) does not apply.

*1.*  Alabama's amended complaint in this action exclusively challenges the Census Bureau's Residence Rule, which is "used to determine where people are counted during each decennial census."  83 Fed. Reg. at 5526; *see* Am. Compl., Doc. # 112, at ¶¶ 126-143 (five causes of action alleging that the Residence Rule is unconstitutional and violates the Administrative Procedure Act).  This challenge does not fall within the scope of Section 2284(a).

Courts applying Section 2284(a) have distinguished between challenges to "precursors to the ultimate apportionment decision," which do not require assignment to a three-judge court, and "direct challenge[s] to apportionment itself," which do fall within the three-judge court requirement.  *Massachusetts v. Mosbacher*, 785 F. Supp. 230, 234-38 (D. Mass.), *rev'd on other grounds sub nom. Franklin v. Massachusetts*, 505 U.S. 788 (1992).  In *Fed'n for Am. Immigration Reform v. Klutznick*, for example, the court noted a challenge to the constitutionality of census practices was one for a single district judge, rather than a three-judge court, since it did

3

not involve any state action apportioning congressional districts. 486 F. Supp. 564, 577-78 (D.D.C. 1980). The court reached the same conclusion in *Philadelphia v. Klutznick*. 503 F. Supp. 657, 658 (E.D. Pa. 1980) ("Th[e] plain language implies that, in order to necessitate the convening of a three-judge court, the challenge must be to an existing apportionment. No existing apportionment is challenged here. That the 1980 census will, in the future, be relied upon in the design of reapportionment legislation for Philadelphia and that there may result some reapportionment effect adverse to the city is not enough to trigger the requirement of § 2284.").

Applying the distinction identified in *Massachusetts*, Plaintiffs' challenge here is to a "precursor[] to the ultimate apportionment decision," not a "direct challenge to apportionment itself." 785 F. Supp. at 236. The Residence Rule is "used to determine where people are counted during each decennial census." 83 Fed. Reg. at 5526. Determining where people are counted is no different from any other census practice—all of which may ultimately be precursors to the ultimate apportionment, but are not the apportionment itself. The Commerce Department and Census Bureau made this very point in separate litigation just a few weeks ago, strenuously arguing that the Residence Rule in fact has *no effect* on the ultimate apportionment decision at all. *See* Defs.' Reply Supp. Mot. to Dismiss 10-11 & n.2, *New York v. Trump*, ECF No. 154, No. 20-CV-5770 (RCW, PWH, JMF) (S.D.N.Y. filed Sept. 10, 2020) ("[I]t does not matter that the Census Bureau established its own Residence Criteria to determine 'usual residents.' That criteria does not bind the Secretary, much less the President.").

In any event, the critical point is that, by its plain language, Section 2284(a) only reaches the constitutionality of the apportionment of congressional districts and does not apply here. That is the end of the matter: "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

*2.* The legislative history of the three-judge court statute supports this conclusion. Section 2284 was amended in 1976 for the specific purpose of *limiting* the number of federal lawsuits required to be litigated before a three-judge court, in light of significant concern that existing statutes placed undue strain on the judiciary. *See, e.g.*, S. Rep. No. 94-204, at 3-4 (1975) (identifying "four major reasons for enacting this legislation which would eliminate the requirement for three-judge courts in all cases except those involving reapportionment or where required by congressional enactment," including "to relieve the burden of three judge court cases, which have increased in number from 129 in 1963 to 320 in 1973, causing a considerable strain on the workload of Federal judges"). Alabama argues that "the text of Section 2284(a) is broad enough to cover" this action. Pls.' Mem. Supp Mot. for Three-Judge Court ("Pls.' Mem."), Doc. # 171-1. Setting aside that the plain text excludes Plaintiffs' challenge from the scope of Section 2284(a), *see supra*, any ambiguity in the text should be construed with Congress's intent to *cabin* three-judge court jurisdiction—not expand it—in mind.

*3.* The appointment of three-judge courts to hear recent constitutional challenges to the Presidential Memorandum directing the exclusion of undocumented immigrants from the apportionment base does not support Plaintiffs' application for a three-judge court.

The Presidential Memorandum declared that "[f]or the purpose of the reapportionment of Representatives following the 2020 census, it is the policy of the United States to exclude" undocumented immigrants from the congressional apportionment base "to the maximum extent feasible and consistent with the discretion delegated to the executive branch." *Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020). The Memorandum accordingly directed the Secretary of Commerce, "[i]n preparing his report to the President under section 141(b) of title 13," to "take

5

all appropriate action, consistent with the Constitution and other applicable law, to provide information permitting the President, to the extent practicable," to exclude undocumented immigrants from the final determination regarding the "whole number of persons in each State" that the President transmits to Congress pursuant to 2 U.S.C. § 2(a). *Id.* at 44,679-80.

By its terms, the Memorandum did *not* affect the conduct of the census, and instead related directly to the calculation of the apportionment base. *See id.* As Judge Furman explained in concluding that appointment of a three-judge court was warranted to a constitutional challenge to the Memorandum:

> [T]he Presidential Memorandum does not purport to change the conduct of the census itself. Instead, it relates to the calculation of the apportionment base used to determine the number of representatives to which each state is entitled. To the extent that Plaintiffs challenge the constitutionality of the Presidential Memorandum, therefore, it would seem that they are challenging "the constitutionality of the apportionment of congressional districts."

Request to the Chief Judge of the U.S. Court of Appeals for the Second Circuit for Appointment of a Three-Judge Panel Pursuant to 28 U.S.C. § 2284(b), at 2, *New York v. Trump*, ECF No. 68, 20-CV-5770 (JMF) (S.D.N.Y. Aug. 7, 2020) (quoting 28 U.S.C. § 2284(a)). Applying again the standard articulated in *Massachusetts*, challenges to the Presidential Memorandum *are* direct challenges to the apportionment, rather than challenges to a "precursor" to the apportionment decision, 785 F. Supp. at 236, and thus do not support Plaintiffs' request for a three-judge court.

*4.* Although Plaintiffs refer to the Martinez Intervenors' cross-claim, Pls.' Mem. at 3, the existence of that cross-claim does not require a different result. First, Plaintiffs are not a party to that cross-claim, which was asserted only against Defendants and raises distinct legal issues from those presented in Plaintiffs' claims. As no party to that cross-claim has requested a three-judge court to hear that claim, and Plaintiffs' claims are not otherwise suitable for a three-judge court

6

for the reasons explained above, *see supra* at 3-6, Plaintiffs cannot use the cross-claim to obtain review by a three-judge court to which they are not otherwise entitled.

Even if this Court subsequently determines that the cross-claim merits referral for a three-judge court under Section 2284(a), the Court should only refer that cross-claim and not the original claims that do not fall within the statute's scope. In analogous circumstances, three-judge courts have refused to consider claims that do not merit a three-judge court under the statute, remanding them to a single district judge for consideration. *See, e.g.*, *Castañon v. United States*, 444 F. Supp. 3d 118, 128-29 (D.D.C. 2020); *Robertson v. Bartels*, 148 F. Supp. 2d 443, 460-62 (D.N.J. 2001), *aff'd*, 534 U.S. 1110 (2002); *Adams v. Clinton*, 90 F. Supp. 2d 35, 38-40 (D.D.C. 2000), *aff'd*, 531 U.S. 941 (2000); *Morse v. Oliver North for U.S. Senate Comm., Inc.*, 853 F. Supp. 212, 215 (W.D. Va. 1994), *rev'd on other grounds sub nom.*, *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996); *Gordon v. Exec. Comm. of the Democratic Party of Charleston*, 335 F. Supp. 166, 170 (D.S.C. 1971). As recently explained in *Castañon*, review by a three-judge court of ancillary claims would "deprive the Court of Appeals of the opportunity to review our work" and risks remand from the Supreme Court of claims improperly considered by the three-judge court. *Castañon*, 444 F. Supp. 3d at 129 (quoting *Adams*, 90 F. Supp. 2d at 39). Because Plaintiffs' original claims and the Martinez Intervenors' cross-claim are analytically distinct, present different issues, and involve only a subset of the parties to this litigation, the Court should not refer Plaintiffs' claims to a three-judge court even if it decides such a referral is needed for the cross-claim.

Instead, because the Court need not address the Martinez Intervenors' cross-claim unless it decides that Plaintiffs are entitled to relief on their claims, this Court should wait to consider whether a three-judge court applies to the cross-claim until it adjudicates the merits of Plaintiffs'

claims. If Plaintiffs lose, the Court will not reach the Martinez Intervenors' cross-claim, so it will be unnecessary to determine if Section 2284(a) applies to that claim. If Plaintiffs prevail and are entitled to relief, and the Court then needs to address the Martinez Intervenors' cross-claim, the Court can address the Section 2284(a) question at that time.

DATED:  September 30, 2020

/s/ Joyce White Vance
Joyce White Vance
101 Paul W. Bryant Drive
Tuscaloosa, AL 35487
jvance@law.ua.edu

/s/ Barry A. Ragsdale
Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Phone: (205) 930-5100
bragsdale@sirote.com

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
   *Chief Counsel for Federal Initiatives*
Elena Goldstein
   *Deputy Chief, Civil Rights Bureau*
Joseph J. Wardenski, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State and Other Government Defendant-Intervenors*


Respectfully submitted,

/s/ Robert S. Vance
THE BLOOMSTON FIRM
Robert S. Vance
2151 Highland Avenue South, Suite 310
Birmingham, AL 35205
(205) 212-9700
Robert@thebloomstonfirm.com
ZARZAUR MUJUMDAR & DEBROSSE
Anil A. Mujumdar (ASB-2004-L65M)
Paul H. Rand (ASB-5595-099N)
2332 Second Avenue North
Birmingham, AL 35203

Telephone: (205) 983-7985
Facsimile: (888) 505-0523
Email: anil@zarzaur.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
Ezra D. Rosenberg
Dorian L. Spence
1401 New York Avenue NW, Suite 400
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-9857
Email: erosenburg@lawyerscommittee.org
dspence@lawyerscommittee.org

DEMOCRACY FORWARD
Robin F. Thurston
John T. Lewis
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Telephone: (202) 448-9090
Email: rthurston@democracyforward.org
jlewis@democracyforward.org

Attorneys for Defendant-Intervenors City of
Atlanta; City of San José; Arlington County;
and King County

DEBEVOISE & PLIMPTON LLP
Jyotin Hamid
Lauren M. Dolecki
Ming Ming Yang
919 Third Ave
New York, NY 10022
(212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
lmdolecki@debevoise.com
mmyang@debevoise.com

CITY OF SAN JOSÉ
Richard Doyle, City Attorney
Nora Frimann, Assistant City Attorney
Office of the City Attorney
200 East Santa Clara Street, 16th Floor

9

San José, CA 95113-1905
Telephone: (408) 535-1900
Facsimile: (408) 998-3131
Email: cao.main@sanjoseca.gov

Attorneys for Defendant-Intervenor
City of San José

COPELAND FRANCO
SCREWS & GILL, P.A.
Robert D. Segall (SEG003)
Post Office Box 347
Montgomery, AL 36101-0347
Phone: (334) 834-1180
Facsimile: (334) 834-3172
Email: segall@copelandfranco.com

OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
James R. Williams, County Counsel
Greta S. Hansen
Raphael N. Rajendra
Marcelo Quiñones
Laura S. Trice
Office of the County Counsel
County of Santa Clara
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
Email: raphael.rajendra@cco.sccgov.org
marcelo.quinones@cco.sccgov.org

LAW OFFICE OF
JONATHAN WEISSGLASS
Jonathan Weissglass
1939 Harrison Street, Suite 150-B
Oakland, CA 94612
Telephone: (510) 836-4200
Email: jonathan@weissglass.com

*Attorneys for the Local Government Defendant-Intervenors*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2020, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this proceeding.


DATED:  September 30, 2020	*/s/ Barry A. Ragsdale*
Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Phone: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com