UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, et al.,   }<br>   }<br>   Plaintiffs,   }<br>   }<br>v.   }<br>   }<br>UNITED STATES DEPARTMENT OF   }<br>COMMERCE, et al.,   }<br>   }<br>   Defendants.   }<br>   }<br>v.   }<br>   }<br>DIANA MARTINEZ, et al.,   }<br>   Intervenor Defendants,   }<br>   }<br>and   }<br>   }<br>JOEY CARDENAS, et al,   }<br>   Cross-Claimants,   }<br>   }<br>v.   }<br>   }<br>BUREAU OF CENSUS, et al.,   }<br>   Cross-Defendants.   }  | Case No.:  2:18-CV-00772-RDP |

**MEMORANDUM OPINION AND ORDER**

In this action, Plaintiffs seek a declaratory judgment that the federal government's inclusion of illegal aliens in the population figures used to apportion congressional seats violates the Fourteenth Amendment of the United States Constitution and the Administrative Procedures Act. (Doc. # 112). This matter is before the court on Plaintiffs' Motion for the Appointment of a Three-Judge Court. (Doc. # 171). The matter has been fully briefed (Docs. # 171-1, 173, 176) and is ripe for review. After careful consideration, and for the reasons discussed below, the court concludes that Plaintiffs' Motion (Doc. # 171) is due to be denied.

**I.      Background**

The Fourteenth Amendment to the Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State." U.S. Const. amend. XIV, § 2. To make that apportionment possible, the Constitution mandates that an "actual Enumeration" be conducted "every ... ten Years, in such Manner as [Congress] shall by Law direct." *Id.* art. I, § 2, cl. 3.

Heeding this mandate, Congress directed the Secretary of Commerce "in the year 1980 and every 10 years thereafter, [to] take a decennial census of population as of the first day of April of such year." 13 U.S.C. § 141(a). The Secretary may take the decennial census "in such form and content as [the Secretary] may determine." *Id.* Following completion of the decennial census, the Secretary must submit to the President "[t]he tabulation of total population by States … as required for the apportionment of Representatives in Congress among the several States." *Id.* § 141(b).

In conducting the census, the Secretary of Commerce is currently required by law to count every single person living in the United States, without regard to citizenship or legal resident status. (Doc. # 112 at 7-8, ¶¶ 16-19). These individuals are then included in the total state population figures used for apportionment and Electoral College purposes, again, regardless of whether they are legal residents of the United States. (Doc. # 112 at 8, ¶¶ 19-20). Thus, when congressional seats and Electoral College votes are apportioned among the states, the apportionment base will include the illegal alien population of each state. (*Id.* at ¶ 20).

Plaintiffs claim that the federal government's inclusion of illegal aliens in the apportionment base is unlawful. And, importantly as related to Plaintiffs' Motion, they do not challenge the apportionment of congressional seats but challenge the Census Bureau's practices. (*See* Doc. # 112 at 7-8, ¶¶ 17-20). Specifically, the provision that Plaintiffs contend is unlawful is

the "Residence Rule." The Residence Rule states that "Citizens of foreign countries living in the United States" are "[c]ounted at the U.S. residence where they live and sleep most of the time." Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525-01, 5533 (Feb. 8, 2018). Plaintiffs' allege in their Amended Complaint that counting citizens of foreign countries living in the United States "will cause the apportionment based on the 2020 census to violate the Fourteenth Amendment." (Doc. # 112 at 30, ¶ 128). In the periphery of this case are other actions challenging a presidential memorandum ("Presidential Memo") that states that "it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status under the Immigration and Nationality Act, as amended (8 U.S.C. 1101 *et seq*.), to the maximum extent feasible and consistent with the discretion delegated to the executive branch." (Doc. # 152-1 at 3). *See, e.g.*, *New York v. Trump*, 2020 WL 5422959 (S.D.N.Y. Sept. 10, 2020).

**II.     Analysis**

At this stage, the court does not address the merits of Plaintiffs' (or any other parties') claims. Rather, the court must determine whether Plaintiffs' allegation that the Residence Rule violates the Constitution is a "challenge to … the apportionment of congressional districts" under 28 U.S.C. § 2284.[1] Plaintiffs argue that "text of Section 2284(a) is broad enough" to cover their challenges to the Residence Rule. (Doc. # 171-1 at 5). Defendants agree. (Doc. # 171 at 2). However, Intervenors disagree and argue that Plaintiffs' challenge to the Residence Rule is a challenge to census practices that are separate and distinct from "the apportionment of

---

[1] Under this statute, if the court finds that a three-judge panel is required, the convening judge notifies the chief judge of the circuit, who selects two other judges, so that the panel will have at least one circuit judge to preside over the proceedings. 28 U.S.C. § 2284(b). Any decision of the panel is appealable directly to the Supreme Court. 28 U.S.C. § 1253; *Shapiro*, 577 U.S. at 41.

3

congressional districts." (Doc. # 173). Because Plaintiffs do not challenge an "apportionment" under § 2284(a), their Motion is due to be denied.

To convene a three-judge court, the court must first determine if the case satisfies the threshold jurisdictional requirements of § 2284(a). *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008); *Armour v. State of Ohio*, 925 F.2d 987, 989 (6th Cir. 1991). And, if a claim meets § 2284(a)'s requirements, the court *must* convene a three-judge district court. *Com. of Mass. v. Mosbacher*, 785 F. Supp. 230, 234 (D. Mass. 1992), *rev'd sub nom. Franklin v. Massachusetts,* 505 U.S. 788 (1992); *Shapiro v. McManus*, 577 U.S. 39 (2015) (discussing that the use of "shall" in a statute eliminates discretion). Of course, the opposite is equally true. If a case fails to meet § 2284(a)'s requirements, the court may not convene a three-judge court. *Armour*, 925 F.2d at 989 (citing *Hamilton v. Mengel*, 629 F. Supp. 1110, 1112 (D. Utah 1986) ("[§ 2284(a)] does not give a district court or a court of appeals a broad discretion to choose between a single judge or a three-judge court.")); *Nat'l Ass'n for Advancement of Colored People (NAACP) v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) (explaining that a three-judge court can be convened only if case is within requirements of § 2284(a) and is justiciable and within subject matter jurisdiction of federal courts). The court makes its determination based on the pleadings. *Armour*, 925 F.2d at 989. Thus, the court evaluates Plaintiffs' Motion based on the allegations in their amended complaint. (Doc. # 112).

The court starts, "as always, with the statutory text." *United States v. Gonzales*, 520 U.S. 1, 4 (1997). In the context of § 2284(a), the provision must be "strictly construed" and not applied liberally as a "broad social policy." *Mitchell v. Donovan*, 398 U.S. 427, 431 (1970). Section 2284(a) reads as follows: "A district court of three judges shall be convened when … an action is filed challenging the constitutionality of *the apportionment* of congressional districts" (emphasis

added). There is no doubt that Plaintiffs advance a constitutional challenge in this case. (Doc. # 112 at 4, ¶ 2). But, the question is whether the constitutional challenge they make, which is one to the Residence Rule (an administrative rule establishing the residency requirements for tabulations in the 2020 Census), is a challenge to the apportionment of congressional districts.

First, the court construes the plain meaning of § 2284(a). The word "apportionment," based on its ordinary meaning when Congress amended § 2284 in 1976, means "the division, partition, or distribution of a subject matter in proportionate parts." *Black's Law Dictionary* (4th ed. 1968); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69, 78 (2012) (explaining that words should be read according to their ordinary meaning when the text was adopted); *Shapiro*, 577 U.S. at 41 (explaining the 1976 amendments to § 2284). Thus, when the definition of "apportionment" is combined with "congressional districts" in the statute, the provision in § 2284(a) reads as "a challenge to the division, partition, or distribution of congressional districts in proportionate parts." 28 U.S.C. § 2284(a).

Plaintiffs' challenge to the Residence Rule is not a challenge to the actual division of congressional districts but rather a challenge to a practice that might affect a future division of districts. Indeed, Plaintiffs outline the functional distinction between the Residence Rule and apportionment in their Complaint by alleging that the "Residence Rule *will cause the apportionment* based on the 2020 census to violate the Fourteenth Amendment …." (Doc. # 112 30, at ¶ 128) (emphasis added). Thus, because Plaintiffs do not challenge the apportionment of congressional districts, Plaintiffs' motion for a three-judge court is due to be denied.

Other district courts agree with this court's statutory construction. Indeed, the District Court for the District of Columbia presided over a challenge like the one in this case where the Secretary of Commerce failed to exclude illegal aliens from the apportionment base in the 1980

5

census. *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 565 (D.D.C. 1980) ("*FAIR*"). That court, in analyzing the case for "the propriety of a three-judge court," decided that the issue was appropriate for a single-judge court.[2] *Id.* at 577. It reasoned that challenging the methods of conducting the census and compiling the apportionment base with respect to illegal aliens is a "census practice which will produce data on which the apportionment of House of Representative members will be based, not … any state action reapportioning congressional districts." *Id.* at 577. In other words, the challenged census practice merely had the "potential[] [to] affect[] allocations of House members to states." *Id.* Other courts have drawn this key distinction between challenging *actual* apportionment and challenging "precursors to the ultimate apportionment decision." *Mosbacher*, 785 F. Supp. at 236 ("An attack on those [census] methods does not necessarily amount to a direct challenge to apportionment itself."); *Adams v. Clinton*, 26 F. Supp. 2d 156, 161 (D.D.C. 1998) (granting request for three judge-panel where plaintiffs were "challenging their existing allocation of zero representatives"); *City of Philadelphia v. Klutznick*, 503 F. Supp. 657, 658 (E.D. Pa. 1980) ("the legal challenge must be to the final product-the apportionment-and not merely to the composition of an ingredient-the census-used in the product's manufacture"); *Igartua v. United States*, 626 F.3d 592, 598 n.6 (1st Cir. 2010) (rejecting an argument that three-judge panel should have been convened for constitutional challenge to exclusion of representation in House of Representatives from Puerto Rico). In summary, courts agree that the "apportionment of congressional districts" in § 2284(a) does not include practices or actions that may lead to or affect a future apportionment.

---

[2] In *FAIR*, a three-judge court was convened by a single-judge district court and granted summary judgment for the defendants because the plaintiffs lacked standing. *Id.* at 577. The three-judge court disagreed with the single-judge court's decision to convene the panel. *Id.*

In support of their argument that a three-judge court is required, Plaintiffs note that three-judge courts have presided over challenges to the Presidential Memo. (Doc. # 171-1 at 5). But, the fact that single-judge district courts convened three-judge panels in those cases simply is not convincing. At the outset, the court notes that in two of the referenced cases the courts summarily convened a three-judge panel without any opinion or analysis. *Common Cause, et al. v. Trump, et al.*, No. 20-cv-2023, Doc. # 37 (D.D.C. Aug. 24, 2020); *Haitian-Americans United, Inc., et al. v. Trump, et al.*, No. 20-cv-11421, Doc. # 13 (D. Mass. Sept. 11, 2020). And, in the cited case, *New York, et al. v. Trump*, et al., No. 20-cv-5770, Doc. # 68 (S.D.N.Y. Aug. 12, 2020), although the court provided its analysis, it failed to properly apply § 2284(a)'s requirements. The Southern District of New York convened a three-judge panel[3] because whether the plaintiffs' challenge was to "apportionment" was "a close call." *Id.* at 3. And, because that court could not "definitively conclude that 'three judges are *not* required, which is enough to trigger the notification requirement [i.e. § 2284(b)(1)]," the court granted the plaintiffs' request for a three-judge court. *Id*. (citing 28 U.S.C. § 2284(b)(1) (emphasis added)).

Section 2284(b)(1) states:

(b) In any action *required* to be heard and determined *by a district court of three judges under subsection (a)* of this section, the composition and procedure of the court shall be as follows:

> (1) Upon the filing of a request for three judges, the judge to whom the request is presented shall, *unless he determines that three judges are not required*, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding.

---

[3] In all fairness, the court in *New York v. Trump* had an alternative reason for convening a three-judge panel. No. 20-cv-5770 (S.D.N.Y. Aug. 12, 2020), Doc. 68. In addition to a constitutional challenge, the plaintiffs alleged a violation of 13 U.S.C. § 195, which allows for plaintiffs to enforce that right in a three-judge court. *Id*.

7

28 U.S.C. § 2284(b)(1) (emphasis added). As already discussed, to convene a three-judge court under § 2284, the single-judge court must make the threshold determination that the case challenges "the constitutionality of the apportionment of congressional districts." *Armour*, 925 F.2d at 989; *NAACP*, 939 F.3d at 475. And, because § 2284(b)(1) applies in "any action required to be heard … under subsection (a)," subsection (b)(1)'s notification and composition procedures apply only after the court finds that a case satisfies the requirements of (a). Indeed, as the Supreme Court has held, the limitation that the court in *New York v. Trump* relied on -- "unless [the judge] determines that three judges are not required" -- does not "grant … discretion to the district judge to ignore § 2284(a)." *Shapiro*, 577 U.S. at 43. Rather, Section 2284(b)(1)'s limitation "merely clarifies that a district judge need not unthinkingly initiate the procedures to convene a three-judge court without first examining the allegations in the complaint." *Id*. at 44.

Finally, the court has carefully considered the purpose of three-judge courts under § 2284. The statute should be strictly construed and not used as a social policy tool. *Mitchell*, 398 U.S. at 431. And, three-judge courts -- while enacted by statute for ensuring more "deliberation" of "the fate of" such important litigation -- should nonetheless be used sparingly considering the heavy burden on judicial resources consumed by convening a three-judge court and direct review to the Supreme Court. 28 U.S.C. § 1253; *Thomas v. Reeves*, 961 F.3d 800, 807 (5th Cir. 2020) (en banc) (Costa, J., concurring); *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008); *Interstate Inv'rs, Inc. v. United States*, 287 F. Supp. 374, 384 (S.D.N.Y. 1968), aff'd, 393 U.S. 479 (1969); *Fort v. Mitchell*, 333 F. Supp. 1199, 1201 (N.D. Miss. 1971). These considerations are relevant here. If the court were to accept Plaintiffs' broad reading of § 2284(a) -- that apportionment includes underlying conduct that may affect an apportionment -- there is hardly any challenge to a governmental practice potentially affecting a future apportionment that would not be required to

be decided by a three-judge panel. Three-judge courts are reserved for challenges to an actual apportionment. Thus, although these considerations are not necessarily dispositive, they further support denying Plaintiffs' motion.

### III. Conclusion

Because Plaintiffs' case does not meet the requirements of 28 U.S.C. § 2284(a), Plaintiff's Motion for the Appointment of a Three-Judge Court (Doc. # 171) is **DENIED**. The court, as a single-judge court, will proceed with all matters in this case.

**DONE** and **ORDERED** this October 9, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE