FILED
2020 Nov-04  PM 05:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| STATE OF ALABAMA, et al., | |
| Plaintiffs, | |
| v. | Case No.:  2:18-cv-00772-RDP |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants, | |
| DIANA MARTINEZ, et al., | |
| Defendant-Intervenors, | |
| COUNTY OF SANTA CLARA, CALIFORNIA, et al., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF NEW YORK, et al., | |
| Defendant-Intervenors, | |

**RESPONSE FROM THE LOCAL GOVERNMENT DEFENDANT-INTERVENORS AND THE STATE AND OTHER GOVERNMENT DEFENDANT-INTERVENORS TO THE COURT'S OCTOBER 30 SHOW CAUSE ORDER**

The Local Government Defendant-Intervenors and the State and Other Government

Defendant-Intervenors respectfully submit the following response to the Court's Show Cause

Order, which directed certain of the Defendant-Intervenors to show cause in writing "whether

they have taken inconsistent positions on the important issue of a three-judge court and, if so, why."[1]  Doc. # 186.

The Defendant-Intervenors respectfully submit to the Court that their arguments regarding whether a three-judge court should be convened in this litigation are consistent with the positions taken in other litigation. because the cases, claims, and remedies are different between the various lawsuits, such that the Defendant-Intervenors' positions on the three-judge court question needed to be different.  In particular, and as explained more fully below:

(1)     the Presidential Memorandum challenges all involve separate claims for relief under a different statute not at issue in this litigation, 13 U.S.C. § 195, which requires mandatory appointment of a three-judge court; and

(2)     courts applying 28 U.S.C. § 2284 have distinguished between "precursors to the ultimate apportionment decision" and "direct challenge[s] to the apportionment itself," and the Defendant-Intervenors' opposition to a three-judge court in this case aimed to explain using that rubric why consistent application of § 2284 would *not* require a three-judge court here and *would* require a three-judge court in the Presidential Memorandum challenges.

The Defendant-Intervenors appreciate and share the Court's interest in assuring that all parties approach the judicial process with full and due candor, and we regret if at any point the

---

[1] The Court directed the Show Cause Order to four intervenors here who are also plaintiffs in challenges to the Presidential Memorandum in the U.S. District Court for the Northern District of California: the City of San Jose, California; King County, Washington; and Arlington County, Virginia (three of the five Local Government Defendant-Intervenors); and the State of California (one of the 26 State and Other Government Defendant-Intervenors).  Show Cause Order, Doc. # 186; *see San Jose v. Trump*, 20-cv-5167 (N.D. Cal. filed July 27, 2020); *California v. Trump*, No. 20-cv-5169 (N.D. Cal. filed July 28, 2020).

The remaining Defendant-Intervenors join this response because, as set out below, all but one (the County of Santa Clara, California) are plaintiffs in other challenges to the Presidential Memorandum that were filed in the U.S. District Court for the Southern District of New York and the U.S. District Court for the District of Columbia.  *See New York v. Trump*, No. 20-cv-5770 (S.D.N.Y. filed July 24, 2020); *Common Cause v. Trump*, No. 20-cv-2023 (D.D.C. filed July 23, 2020).  The *New York* and *Common Cause* plaintiffs are similarly situated to the *San Jose* and *California* plaintiffs in terms of the positions they took regarding the three-judge court question, and therefore wish to present the Court a full picture of the positions taken in the Presidential Memorandum lawsuits for the Court's awareness and in the interest of transparency.

Defendant-Intervenors could have kept the Court better apprised of developments in other lawsuits.  Defendant-Intervenors note that, in their opposition to Plaintiffs' motion for appointment of a three-judge panel, they did distinguish the merits of Plaintiffs' motion from the merits for the appointment of a three-judge panel in the cases dealing with the constitutional challenge to the Presidential Memorandum. Reading over that submission, Defendant-Intervenors realize that they inadvertently failed to make it clear that many of them were parties in the Presidential Memorandum cases, where they were arguing against appointment of a three-judge panel. Defendant-Intervenors apologize for any confusion resulting from this omission. For this reason, the Defendant-Intervenors also summarize in this response the steps they took in the course of this litigation to advise the Court of the existence and status of the various Presidential Memorandum lawsuits.

## I.      Statutory background.

As related to the matter the Court has directed the Defendant-Intervenors to address in this response, two separate statutory grounds for the appointment of a three-judge court are at issue.

First, 28 U.S.C. § 2284 provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." *Id.* § 2284(a).  Section 2284 was the sole basis for Alabama's request for a three-judge court in this litigation.  *See* Plaintiffs' Motion for the Appointment of a Three-Judge Court, Doc. # 171.

Second, the Census Act prohibits "statistical sampling" when determining the population for apportionment purposes. *See* 13 U.S.C. § 195 ("Except for the determination of population for purposes of apportionment of Representatives in Congress among the several States, the

Secretary shall, if he considers it feasible, authorize the use of the statistical method known as 'sampling' in carrying out the provisions of this title."). Congress has provided that any action brought under section 195 "shall be heard and determined by a district court of three judges in accordance with section 2284 of title 28, United States Code." Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act, 1998, § 209(b), (e)(1), Pub. L. No. 105-119, 111 Stat. 2440, 2481-82 (1997) (the "1998 Appropriations Act") (codified at 13 U.S.C. § 141 note). As noted below, the Defendant-Intervenors here who are plaintiffs in other challenges to the Presidential Memorandum all requested appointment of a three-judge court in those cases on the basis of *both* section 2284 *and* section 195.

## II.     Challenges to the Presidential Memorandum in other courts.

On July 21, 2020, President Trump issued a memorandum declaring that "[f]or the purpose of the reapportionment of Representatives following the 2020 census, it is the policy of the United States to exclude" undocumented immigrants from the congressional apportionment base "to the maximum extent feasible and consistent with the discretion delegated to the executive branch." *Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020). The same day that the Presidential Memorandum was issued, the Federal Defendants filed a "Notice of Presidential Memorandum" with this Court to advise the Court of its issuance. Doc. # 152.

1. *Defendant-Intervenors' challenges to the Presidential Memorandum.* Within one week of the issuance of the Presidential Memorandum, all but one of the State and Other Government Defendant-Intervenors and the Local Government Defendant-Intervenors in this Court had filed separate lawsuits in other district courts challenging the Presidential Memorandum on statutory and constitutional grounds, as described below.

All of the 26 State and Other Defendant-Intervenors in this Court are plaintiffs in separate litigation that was commenced to challenge the Presidential Memorandum shortly after it was issued.  Specifically, on July 24, 2020, all but one of the State and Other Defendant-Intervenors filed a lawsuit in the Southern District of New York, together with other states and local governments who are not intervenors in this action, to challenge the Presidential Memorandum. *See* Complaint, *New York v. Trump*, No. 20-cv-5770 (S.D.N.Y. filed July 24, 2020).  That same day, those State and Other Defendant-Intervenors filed a notice in this action to advise the Court that they had commenced that lawsuit in the Southern District of New York.  Doc. #154.  The remaining party from among the State and Other Defendant-Intervenors, the State of California, filed a separate lawsuit to challenge the Presidential Memorandum on July 28, 2020.  *See* Complaint, *California v. Trump*, No. 20-cv-5169 (N.D. Cal. filed July 28, 2020).

Four of the five Local Government Defendant-Intervenors in this Court are likewise plaintiffs in separate litigation challenging the Presidential Memorandum.  On July 23, 2020, the City of Atlanta, Georgia, filed a lawsuit challenging the Presidential Memorandum in the United States District Court for the District of Columbia.  *See* Complaint, *Common Cause v. Trump*, No. 20-cv-2023 (D.D.C. filed July 23, 2020).  And on July 27, 2020, the City of San Jose, California; King County, Washington; and Arlington County, Virginia commenced their own lawsuit to challenge the Presidential Memorandum in the Northern District of California.  *See* Complaint, *San Jose v. Trump*, 20-cv-5167 (N.D. Cal. filed July 27, 2020).  The remaining Local Government Defendant-Intervenor—the County of Santa Clara, California—is not a plaintiff in any lawsuit challenging the Presidential Memorandum.

In sum, all but one of the Local Government Defendant-Intervenors and the State and Other Government Defendant-Intervenors are plaintiffs in lawsuits challenging the Presidential

Memorandum: 25 of the 26 State and Other Defendant-Intervenors are plaintiffs in *New York v. Trump*, 20-cv-5770 (S.D.N.Y.); one of the 26 State and Other Defendant-Intervenors is a plaintiff in *California v. Trump*, 20-cv-5169 (N.D. Cal.); one of the five Local Government Defendant-Intervenors is a plaintiff in *Common Cause v. Trump*, No. 20-cv-2023 (D.D.C.); and three of the five Local Government Defendant-Intervenors are plaintiffs in *San Jose v. Trump*, No. 20-cv-5167 (N.D. Cal.).

On July 29, 2020, the Federal Defendants filed a Notice advising this Court of each of these lawsuits, and of the participation of each intervenor here as a plaintiff in the other cases. *See* Notice of Additional Lawsuits Challenging the Recent Presidential Memorandum, Doc. # 155. The Defendant-Intervenors acknowledge that with the exception of the July 24 Notice filed by the *New York v. Trump* plaintiffs, Doc. #154, the Defendant-Intervenors did not themselves advise the Court of the commencement of these separate lawsuits. In light of the July 29 Notice filed by the Federal Defendants within days of the commencement of the remaining Presidential Memorandum challenges, Doc. # 155, the Defendant-Intervenors believed the Court was aware of each specific Defendant-Intervenors' participation as a plaintiff in lawsuits challenging that Memorandum. The Defendant-Intervenors assure the Court that the sole basis for not filing an additional notice was their belief, in view of the Federal Defendants' July 29 Notice, that further filings to so notify the Court would be duplicative.

*2. The appointment of three-judge courts in the Presidential Memorandum challenges.* The plaintiffs in each of the four lawsuits described above requested the appointment of a three-judge court in those cases, and the respective district courts (and the Chief Judges of the Courts of Appeals in those federal circuits) agreed and appointed a three-judge court to hear those cases.

In *New York v. Trump*, the plaintiffs sought appointment of a three-judge court because "the issue [under § 2284(a)] is, at the least, a close question," and because the plaintiffs in a consolidated case had alleged a claim for relief under section 195.[2]  *New York*, Doc. # 58.  The district court (Judge Furman) issued an opinion requesting the appointment of a three-judge court based on both section 2284 and section 195, *New York*, Doc. # 68, and the Chief Judge of the Second Circuit appointed such a court on August 10, 2020.  *New York*, Docs. # 82, 83.  That same day, the Federal Defendants in this action advised this Court both that New York and its co-plaintiffs had requested a three-judge court in *New York v. Trump* and that the Second Circuit had appointed such a court.  *See* Defendants' Reply to the Parties' Briefs Concerning the Effect of the July 21, 2020 Presidential Memorandum, Doc. # 163, at 4.

In *Common Cause v. Trump*, the plaintiffs likewise requested a three-judge court on the basis of both section 2284 and section 195.  *Common Cause*, Docs. # 29, 29-1.  The defendants stated that they did not oppose.  *Common Cause*, Doc. # 30.  On August 20, 2020, the district court (Judge Cooper) issued a written opinion granting the plaintiffs' motion and requesting the appointment of a three-judge court based on both section 2284 and section 195, *Common Cause*, Doc. # 33, and the Chief Judge of the D.C. Circuit appointed such a court on August 24, 2020. *Common Cause*, Doc. # 37.

In *San Jose v. Trump* and *California v. Trump*, the district court ordered that the cases be treated as related and that the parties file a consolidated joint Case Management Statement.  *San*

---

[2] The governmental plaintiffs in *New York v. Trump* did not allege violations of section 195, *see New York*, Doc. # 34 (governmental plaintiffs' amended complaint), but their action was consolidated with a separate challenge brought by non-governmental plaintiffs who did allege a violation of section 195, *see New York*, Doc. # 57, at ¶¶ 11, 16, 181, 251-62 (non-governmental plaintiffs' amended complaint), and the plaintiffs in the consolidated cases jointly requested appointment of a three-judge court on the basis of both section 2284 and section 195, *see New York*, Doc. # 58.

*Jose*, Doc. # 43.  In that joint Case Management Statement, the *San Jose* plaintiffs and the *California* plaintiffs both indicated their intent to request a three-judge court on the basis of both section 2284 and section 195.  *San Jose*, Doc. # 44, at 2-3; *see also San Jose*, Doc. # 46, at ¶¶ 13-16 (amended complaint requesting three-judge court under section 2284 and section 195); California, Doc. # 28 (amended complaint alleging violations of section 195).  The district court (Judge Koh) issued a written opinion agreeing that a three-judge court was warranted under both section 2284 and section 195, *San Jose*, Doc. # 49; *California*, Doc. # 17 (identical), and the Chief Judge of the Ninth Circuit appointed such a court on August 20, 2020.  *San Jose*, Doc. # 56; *California*, Doc. # 22.

As discussed below, the Defendant-Intervenors distinguished the present case from the Presidential Memorandum challenges in opposing Alabama's motion for the appointment of a three-judge court, but acknowledge that they did not file a separate notice advising this Court that they sought the appointment of a three-judge court in those challenges.  The Defendant-Intervenors wish to assure the Court that they did not intentionally shield from the Court's view their positions on those cases .  And for the reasons that follow, all the Defendant-Intervenors believe that they have provided this Court with their positions regarding the three-judge court question and these positions have been consistent across all of these lawsuits.

III.    **The Presidential Memorandum challenges all involved separate claims for relief under section 195, which is not present in this lawsuit and which requires a three-judge court.**

The Defendant-Intervenors respectfully submit that their positions on the appointment of a three-judge court are consistent between this case and the Presidential Memorandum challenges because no party in this case has raised a claim for relief under section 195, and all of the Presidential Memorandum challenges include such a claim, and the plaintiffs sought appointment of a three-judge court in part on that basis.  *See New York*, Doc. # 58, at 2; *Common*

*Cause*, Doc. # 29-1, at 5-6; *San Jose*, Doc. # 44, at 2-3 (joint statement of both the *San Jose* plaintiffs and the *California* plaintiffs).

Section 195 prohibits statistical sampling when determining the population for apportionment purposes, *see* 13 U.S.C. § 195; and the 1998 Appropriations Act directs that any challenge under section 195 "shall" be heard and determined by a three-judge court. *See* 1998 Appropriations Act § 209(e)(1) (codified at 13 U.S.C. § 141 note). In all four cases, where the Defendant-Intervenors are plaintiffs in challenges to the Presidential Memorandum the respective district courts issued written opinions requesting that the Chief Judge in their circuit appoint a three-judge court in part on the ground that section 195 required that such a court be convened. *New York*, Doc. # 68; *Common Cause*, Doc. # 33; *San Jose*, Doc. # 49; *California*, Doc. # 17.

In this case, by contrast, no party has alleged a violation of section 195, and Alabama did not seek appointment of a three-judge court on that basis. Doc. # 171. In denying Alabama's motion for appointment of a three-judge court, this Court expressly recognized that section 195 provided an alternative ground for a three-judge court in the *New York* action. *See Alabama v. U.S. Dep't of Commerce*, No. 18-cv-772 (RDP), 2020 WL 5994259, at *3 n.3 (N.D. Ala. Oct. 9, 2020) ("In all fairness, the court in *New York v. Trump* had an alternative reason for convening a three-judge panel. In addition to a constitutional challenge, the plaintiffs alleged a violation of 13 U.S.C. § 195, which allows for plaintiffs to enforce that right in a three-judge court.") (citations omitted). The Court's observation was correct, and the Court's reasoning applies with the same force to the *Common Cause*, *San Jose*, and *California* challenges to the Presidential Memorandum.

9

Because the Defendant-Intervenors all sought the appointment of a three-judge court in their Presidential Memorandum challenges in part on the ground that section 195 required as much, Defendant-Intervenors respectfully submit that there is no inconsistency between their requests for a three-judge court in those cases and their opposition to a three-judge court in this action.

**IV.  Section 2284(a) does not apply in this action because Plaintiffs' complaint does not challenge the constitutionality of the apportionment of congressional districts.**

To be sure, the Defendant-Intervenors also took the position that section 2284 did *not* require the appointment of a three-judge court in this case, and *did* require the appointment of a three-judge court in the Presidential Memorandum challenges.  The Defendant-Intervenors addressed this distinction explicitly in their opposition to Alabama's motion and appreciate the opportunity to explain further to the Court why these positions reflect, in Defendant-Intervenors' view, a consistent interpretation of section 2284.

As noted, section 2284 provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts."  28 U.S.C. § 2284(a).  The Defendant-Intervenors' opposition to Alabama's motion for a three-judge court cited authority identifying what they believed to be an instructive framework for determining when section 2284(a) applies: "Courts applying Section 2284(a) have distinguished between challenges to 'precursors to the ultimate apportionment decision,' which do not require assignment to a three-judge court, and 'direct challenge[s] to apportionment itself,' which do fall within the three-judge court requirement."  Doc. # 173, at 3 (quoting *Massachusetts v. Mosbacher*, 785 F. Supp. 230, 234-38 (D. Mass.), *rev'd on other grounds sub nom. Franklin v. Massachusetts*, 505 U.S. 788 (1992)).  The Defendant-Intervenors then sought to expressly distinguish Alabama's challenge to the Census Bureau's Residence Rule

from the separate challenges to the Presidential Memorandum. *Id.* at 5-6. In particular, the

Defendant-Intervenors sought to expressly acknowledge for the Court's awareness that the

Presidential Memorandum challenges had all been assigned to three-judge courts, and to explain

why the reasoning of those decisions should not be applied here, stating as follows:

> The appointment of three-judge courts to hear recent constitutional challenges to the Presidential Memorandum directing the exclusion of undocumented immigrants from the apportionment base does not support Plaintiffs' application for a three-judge court.

> The Presidential Memorandum declared that "[f]or the purpose of the reapportionment of Representatives following the 2020 census, it is the policy of the United States to exclude" undocumented immigrants from the congressional apportionment base "to the maximum extent feasible and consistent with the discretion delegated to the executive branch." *Memorandum on Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census*, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020). The Memorandum accordingly directed the Secretary of Commerce, "[i]n preparing his report to the President under section 141(b) of title 13," to "take all appropriate action, consistent with the Constitution and other applicable law, to provide information permitting the President, to the extent practicable," to exclude undocumented immigrants from the final determination regarding the "whole number of persons in each State" that the President transmits to Congress pursuant to 2 U.S.C. § 2(a). *Id.* at 44,679-80.

> By its terms, the Memorandum did *not* affect the conduct of the census, and instead related directly to the calculation of the apportionment base. *See id.* As Judge Furman explained in concluding that appointment of a three-judge court was warranted to a constitutional challenge to the Memorandum:

>> [T]he Presidential Memorandum does not purport to change the conduct of the census itself. Instead, it relates to the calculation of the apportionment base used to determine the number of representatives to which each state is entitled. To the extent that Plaintiffs challenge the constitutionality of the Presidential Memorandum, therefore, it would seem that they are challenging "the constitutionality of the apportionment of congressional districts."

> Request to the Chief Judge of the U.S. Court of Appeals for the Second Circuit for Appointment of a Three-Judge Panel Pursuant to 28 U.S.C. § 2284(b), at 2, *New York v. Trump*, ECF No. 68, 20-CV-5770 (JMF) (S.D.N.Y. Aug. 7, 2020) (quoting 28 U.S.C. § 2284(a)). Applying again the standard articulated in *Massachusetts*, challenges to the Presidential Memorandum *are* direct challenges to the apportionment, rather than challenges to a "precursor" to the apportionment

decision, 785 F. Supp. at 236, and thus do not support Plaintiffs' request for a three-judge court.

Doc. # 173 at 5-6.

The Defendant-Intervenors respectfully submit that in making this argument, they consistently identified a rubric courts have used to determine when section 2284(a) applies—whether a party challenged a "precursor" to the apportionment decision (three-judge court should not be appointed) or instead "directly challenged" the apportionment itself (three-judge court should be appointed)—and explained why the application of that same test merited a different outcome in this lawsuit than in the Presidential Memorandum challenges.[3]

Here, Alabama exclusively challenges the Census Bureau's Residence Rule, which is "used to determine where people are counted during each decennial census." 83 Fed. Reg. at 5526; *see* Am. Compl., Doc. # 112, at ¶¶ 126-143. As the Defendant-Intervenors previously contended, Alabama therefore challenge a "precursor[] to the ultimate apportionment decision," which does not fall within section 2284(a)'s reach. Doc. # 173, at 3-4; *see also Massachusetts*, 785 F. Supp. at 234-38; *Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 577-78 (D.D.C. 1980); *Philadelphia v. Klutznick*. 503 F. Supp. 657, 658 (E.D. Pa. 1980); Tr. of Oct. 5 Oral Argument, Doc. # 177 at 26 (explaining that section 2284 requires "challenging the final product—that is, apportionment—not just an ingredient that goes into the product's

---

[3] In other challenges related to the decennial census practices, the Defendant-Intervenors have not sought appointment of a three-judge court, where, in their view, the challenge was best considered a "precursor" to the apportionment rather than a direct challenge to the apportionment itself. Most recently, on August 18, 2020, San Jose and King County filed a lawsuit to challenge the federal government's decision to shorten census operations. *See* Complaint, *Nat'l Urban League v. Ross*, No. 20-cv-5799 (N.D. Cal. filed Aug. 18, 2020). Because San Jose and King County considered that case to be a challenge only to the conduct of the census (and only an indirect challenge to the apportionment itself), San Jose and King County did not seek appointment of a three-judge court in that case.

manufacture"). That Alabama's claims are not a "direct challenge" to the apportionment itself is bolstered by the Federal Defendants' position in the *New York* litigation, stating that the Residence Rule has no necessary effect on the ultimate apportionment decision at all. *See* Defs.' Reply Supp. Mot. to Dismiss 10-11 & n.2, *New York*, Doc. # 154. The Defendant-Intervenors therefore respectfully continue to believe that their opposition to the appointment of a three-judge court here is consistent with the positions they asserted in their challenges to the Presidential Memorandum (as well as being consistent with the caselaw on this question).

Defendant-Intervenors recognize that they did not explicitly state that these challenges included *their* challenges to the Presidential Memorandum when discussing "recent constitutional challenges to the Presidential Memorandum" in their opposition to Alabama's motion for a three-court panel. Doc. # 173, at 5. This was an inadvertent omission. *See* Docs. # 154, 155, 163 at 4. Because Defendant-Intervenors believed (and continue to believe) that there was no inconsistency between their position to this Court and the positions they took in those other cases, it candidly did not occur to them to expressly point out those positions; had Defendant-Intervenors believed there was an inconsistency to explain, they would have welcomed the opportunity to do so. Defendant-Intervenors nonetheless recognize that the Court would have appreciated further explanation at the time, and regret if this inadvertent omission has raised any concerns.

DATED: November 4, 2020                    Respectfully submitted,

                                           XAVIER BECERRA
                                           Attorney General of California
                                           THOMAS S. PATTERSON
                                           Senior Assistant Attorney General
                                           ANTHONY R. HAKL
                                           Supervising Deputy Attorney General

/s/ *Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
R. MATTHEW WISE
Deputy Attorneys General

*Attorneys for the State of California*

/s/ *Barry A. Ragsdale*
Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Phone: (205) 930-5100
bragsdale@sirote.com

/s/ *Joyce White Vance*
Joyce White Vance
101 Paul W. Bryant Drive
Tuscaloosa, AL 35487
jvance@law.ua.edu

LETITIA JAMES
*Attorney General of the State of New York*

By: /s/ *Matthew Colangelo*
Matthew Colangelo
   *Chief Counsel for Federal Initiatives*
Elena Goldstein
   *Deputy Chief, Civil Rights Bureau*
Joseph J. Wardenski, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State and Other Government
Defendant-Intervenors*

Respectfully submitted,

/s/ Robert S. Vance
THE BLOOMSTON FIRM
Robert S. Vance
2151 Highland Avenue South, Suite 310
Birmingham, AL 35205
(205) 212-9700
Robert@thebloomstonfirm.com

DAGNEY JOHNSON LAW GROUP
Anil A. Mujumdar (ASB-2004-L65M)
2170 Highland Avenue South, Suite 205
Birmingham, Alabama 35205
Telephone: (205) 649-7502
Facsimile: (205) 809-7899
Email: anil@dagneylaw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW

14

Ezra D. Rosenberg
Dorian L. Spence
1401 New York Avenue NW, Suite 400
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-9857
Email: erosenburg@lawyerscommittee.org
dspence@lawyerscommittee.org

DEMOCRACY FORWARD
Robin F. Thurston
John T. Lewis
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Telephone: (202) 448-9090
Email: rthurston@democracyforward.org
jlewis@democracyforward.org

Attorneys for Defendant-Intervenors City of
Atlanta; City of San José; Arlington County;
and King County

DEBEVOISE & PLIMPTON LLP
Jyotin Hamid
Lauren M. Dolecki
Ming Ming Yang
919 Third Ave
New York, NY 10022
(212) 909-6000
Facsimile: (212) 909-6836
Email: jhamid@debevoise.com
lmdolecki@debevoise.com
mmyang@debevoise.com

Robert Kaplan
801 Pennsylvania Avenue NW, Suite 500
Washington, DC 20001
Telephone: (202) 383-8000
Facsimile: (202 383-8188
Email: rbkaplan@debevoise.com

CITY OF SAN JOSÉ
Richard Doyle, City Attorney
Nora Frimann, Assistant City Attorney
Office of the City Attorney

200 East Santa Clara Street, 16th Floor
San José, CA 95113-1905
Telephone: (408) 535-1900
Facsimile: (408) 998-3131
Email: cao.main@sanjoseca.gov

Attorneys for Defendant-Intervenor
City of San José

COPELAND FRANCO
SCREWS & GILL, P.A.
Robert D. Segall (SEG003)
Post Office Box 347
Montgomery, AL 36101-0347
Phone: (334) 834-1180
Facsimile: (334) 834-3172
Email: segall@copelandfranco.com

OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
James R. Williams, County Counsel
Greta S. Hansen
Raphael N. Rajendra
Marcelo Quiñones
Karun Tilak
Office of the County Counsel
County of Santa Clara
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
Email: raphael.rajendra@cco.sccgov.org
marcelo.quinones@cco.sccgov.org
karun.tilak@cco.sccgov.org

LAW OFFICE OF
JONATHAN WEISSGLASS
Jonathan Weissglass
1939 Harrison Street, Suite 150-B
Oakland, CA 94612
Telephone: (510) 836-4200
Email: jonathan@weissglass.com

*Attorneys for the Local Government Defendant-
Intervenors*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2020, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this proceeding.

DATED:  November 4, 2020

_/s/ Barry A. Ragsdale_
Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Phone: (205) 930-5100
Fax: (205) 930-5101
bragsdale@sirote.com