FILED
2021 Jan-08 PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **STATE OF ALABAMA, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | |
| } | |
| **UNITED STATES DEPARTMENT OF** } | |
| **COMMERCE, et al.,** } | |
| } | |
| **Defendants.** } | |
| } | |
| **v.** } | **Case No.:  2:18-CV-00772-RDP** |
| } | |
| **DIANA MARTINEZ, et al.,** } | |
| **Intervenor Defendants,** } | |
| } | |
| **and** } | |
| } | |
| **JOEY CARDENAS, et al.,** } | |
| **Cross-Claimants,** } | |
| } | |
| **v.** } | |
| } | |
| **BUREAU OF CENSUS, et al.,** } | |
| **Cross-Defendants.** } | |

### ORDER

This matter is before the court on Plaintiffs' and State and Local Intervenor-Defendants' Joint Motion to Stay. (Doc. # 193). This action was filed by Plaintiffs claiming that the Department of Commerce's decision to include illegal aliens in the apportionment base is unlawful. The policy that carries out this inclusion is the so-called "Residence Rule." Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525 (February 8, 2018) (to be codified at 15 C.F.R. Ch. I) ("Residence Rule"). (Doc. # 112 at 2). Plaintiffs allege that as a result of the

Residence Rule, the congressional and electoral apportionment predicated on the 2020 census numbers will re-allocate a congressional seat and an electoral vote from the State of Alabama to a state with a larger illegal alien population. (Doc. # 112 at 2). On June 5, 2019, the court entered a memorandum opinion concluding that it had jurisdiction to hear this action based on the injuries Plaintiffs alleged in their complaint. (Doc. # 84). However, as the court has noted, it has a continuing obligation during each stage of the litigation to ensure it has subject matter jurisdiction. In the last eighteen months, there have been a number of factual developments surrounding the 2020 census and the upcoming apportionment, including President Trump's "Presidential Memorandum" seeking to exclude illegal aliens from the apportionment. (Docs. # 152, 153). Moreover, and even more importantly, the Supreme Court has weighed in on federal courts' jurisdiction over pre-apportionment challenges. In a December 18, 2020 opinion, it held that parties challenging the Presidential Memorandum did not have standing because any apportionment injury that might occur because of the memorandum is too speculative to satisfy Article III. *Trump v. New York*, 592 U.S. ---- (2020).

The court notes that presently there are different possible outcomes related to apportionment (at least as it is relevant to Plaintiffs' allegations and claims). One possibility is that over the next twelve days, President Trump may implement the Presidential Memorandum, and Plaintiffs receive the relief they seek from this court by executive fiat. Another possibility is -- despite the Residence Rule and regardless of whether the Presidential Memorandum is implemented -- that Plaintiffs will not be injured; thus, their claims would be moot. Further complicating Plaintiffs' case are the factual similarities here to the facts in *Trump v. New York*, where the Supreme Court said that "at present, this case is riddled with contingencies and speculation" such that it precludes judicial review. *Trump v. New York*, 592 U.S. ---- (2020) (slip

op., at 4). For example, in their Joint Motion (Doc. # 193), the parties state that "the census count has now been completed." (Doc. # 193). And, at this stage, Supreme Court precedent requires Plaintiffs to show that they are "substantially likely" to suffer an apportionment injury. *Id.*

On or before **February 10, 2021** or within **seven (7) Days** of the delivery of the apportionment count, whichever occurs earlier, the Plaintiffs **SHALL SHOW CAUSE** why the injuries they allege are more than just "predictions." *Id.* at 5. In other words, Plaintiffs must show that even though "[p]re-apportionment litigation always 'presents a moving target,'" that the injuries they claim (or expect to occur) are "more than conjecture."[1] *Id.* (internal citations omitted). Any other party wishing to brief the court on this issue or respond to Plaintiffs **SHALL** submit briefing **on or before February 17, 2021** or **seven (7) Days** from Plaintiffs' filing of its Show Cause response, whichever occurs earlier.

In the Joint Motion to Stay (Doc. # 193), Plaintiffs and the State and Local Intervenors make clear that they believe "there is a reasonable prospect that the apportionment count will be released soon and that Defendants will implement the [Presidential] Memorandum." (*Id.* at 4). For good cause, the Motion is **GRANTED**, and this action is **STAYED**.

**DONE** and **ORDERED** this January 8, 2021.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[1] At such a time that apportionment occurs, the court may take judicial notice of Defendants' publicly available census record as well as the final apportionment. *See Long v. Docking*, 283 F. Supp. 539, 542 (D. Kan. 1968) (taking judicial notice of the apportionment of the Kansas House of Representatives); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *5 (S.D. Fla. Mar. 20, 2015) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.") (internal quotation marks omitted); *Skolnick v. Bd. of Comm'rs of Cook Cty.*, 435 F.2d 361, 363 (7th Cir. 1970) (taking judicial notice of census report); *Henderson v. Sun Pharm. Indus., Ltd.*, 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity.").